IN THE COURT OF APPEALS



FILED BY CLERK

MAY 19 2008

COURT OF APPEALS
DIVISION TWO

MAYER UNIFIED SCHOOL DISTRICT )
and GADSEN ELEMENTARY SCHOOL )
DISTRICT, )
            )
           Plaintiffs/Appellants, )
            )
           v. )
            )
MARK WINKLEMAN, in his capacity as )
State Land Commissioner; THE )
ARIZONA STATE LAND )
DEPARTMENT; THE STATE OF )
ARIZONA; APACHE COUNTY; )
COCHISE COUNTY; COCONINO )
COUNTY; GRAHAM COUNTY; )
GREENLEE COUNTY; MARICOPA )
COUNTY; MOHAVE COUNTY; )
NAVAJO COUNTY; PIMA COUNTY; )
PINAL COUNTY; SANTA CRUZ )
COUNTY; YAVAPAI COUNTY; YUMA )
COUNTY; MARICOPA COUNTY )
FLOOD CONTROL DISTRICT; )
ARIZONA DEPARTMENT OF )
TRANSPORTATION; TOWN OF )
CAREFREE; CITY OF TUCSON; CITY )
OF FLAGSTAFF; TOWN OF GILA )
BEND; CITY OF GLENDALE; CITY OF )
GLOBE; MAGMA FLOOD CONTROL )
DISTRICT; TOWN OF MARANA; CITY )
OF PEORIA; CITY OF PHOENIX; CITY )
OF SCOTTSDALE; CITY OF SIERRA )
VISTA; and CITY OF TEMPE, )
            )
           Defendants/Appellees. )
            )
_____ )
            )

2 CA-CV 2007-0126
DEPARTMENT B

O P I N I O N

MAYER UNIFIED SCHOOL DISTRICT )
and GADSEN ELEMENTARY SCHOOL )
DISTRICT, )
                                     )

                Plaintiffs/Appellants/ )
                     Cross-Appellees, )
                                       )

         v. )

CITY OF PEORIA and CITY OF )
SCOTTSDALE, )
                                       )

                Defendants/Appellees/ )
                     Cross-Appellants. )
                                       )
                                       )

APPEAL FROM THE SUPERIOR COURT OF MARICOPA COUNTY

Cause No. CV2004-020078

Honorable Ruth H. Hilliard, Judge

AFFIRMED

Arizona Center for Law in the Public Interest
  By Timothy M. Hogan and Joy Herr-Cardillo
                                                   Phoenix
                        Attorneys for Plaintiffs/Appellants/
                                        Cross-Appellees

Terry Goddard, Arizona Attorney General
  By William A. Richards, Patrick B. Sigl,
    and Kenneth D. Nyman
                                                   Phoenix
                        Attorneys for Defendants/Appellees
                        Mark Winkleman, Arizona State Land
                          Department, and State of Arizona

Criss E. Candelaria, Apache County Attorney
  By Edward W. France III

St. John's
Attorneys for Defendant/Appellee
Apache County

Edward G. Rheinheimer, Cochise County
Attorney
  By Britt W. Hanson

Bisbee
Attorneys for Defendant/Appellee
Cochise County

Terence C. Hance, Coconino County Attorney
  By Jean E. Wilcox

Flagstaff
Attorneys for Defendant/Appellee
Coconino County

Safford
Attorney for Defendant/Appellee
Graham County

Kenneth A. Angle, Graham County Attorney

Gust Rosenfeld, P.L.C.
  By Richard A. Segal, Richard B. Hood,
    and Craig A. McCarthy

Phoenix
Attorneys for Defendants/Appellees
Maricopa County and Maricopa
County Flood Control District

Matthew J. Smith, Mohave County Attorney
  By Robert A. Taylor

Kingman
Attorneys for Defendant/Appellee
Mohave County

Melvin R. Bowers, Jr., Navajo County Attorney
  By Lance B. Payette

Holbrook
Attorneys for Defendant/Appellee
Navajo County

Barbara LaWall, Pima County Attorney
  By Nancy J. Davis

Tucson
Attorneys for Defendant/Appellee
Pima County

James P. Walsh, Pinal County Attorney
 By Chris M. Roll

Florence
Attorneys for Defendant/Appellee
Pinal County

Sheila Sullivan Polk, Yavapai County Attorney
 By Jack H. Fields

Prescott
Attorneys for Defendant/Appellee
Yavapai County

Jon R. Smith, Yuma County Attorney
 By Edward P. Feheley

Yuma
Attorneys for Defendant/Appellee
Yuma County

Gallagher & Kennedy, P.A.
 By Mark A. Fuller, Kevin E. O'Malley
  and C. Lincoln Combs

Phoenix
Attorneys for Defendant/Appellee
Arizona Department of Transportation

Moyes Storey Ltd.
 By C. Brad Woodford

Phoenix
Attorneys for Defendants/Appellees
Town of Carefree, City of Flagstaff,
Town of Gila Bend, City of Glendale,
City of Globe, Town of Marana,
City of Phoenix, City of Sierra Vista,
and City of Tempe

Cooper & Rueter, L.L.P.
 By Stephen R. Cooper

Casa Grande
Attorneys for Defendant/Appellee
Magma Flood Control District

Stephen M. Kemp, Peoria City Attorney
 By Ellen M. Van Riper and Cynthia Odom

Peoria
Attorneys for Defendant/Appellee/
Cross-Appellant City of Peoria

4

Deborah W. Robberson, Scottsdale City Attorney
  By Bruce Washburn                                                    Scottsdale
                                           Attorneys for Defendant/Appellee/
                                           Cross-Appellant City of Scottsdale


Michael G. Rankin, Tucson City Attorney
  By Tobin Rosen                                                          Tucson
                                             Attorneys for Defendant/Appellee
                                             City of Tucson

V Á S Q U E Z, Judge.

¶1        In 2004, parents of children attending various public schools in Arizona, later joined by Mayer Unified School District and Gadsen Elementary School District ("the school districts"), sued the State Land Commissioner, the Arizona State Land Department, and the State of Arizona, (collectively, "the State Defendants"), alleging these defendants had failed to obtain compensation from numerous easement holders who had been granted easements between 1929 and 1967 across state school trust lands, in violation of the Arizona-New Mexico Enabling Act, Act of June 20, 1910, Pub. L. No. 219, ch. 310, 36 Stat. 557 ("Enabling Act"). The plaintiffs claimed the easements ("09 easements")[1] were void, the defendants had breached their fiduciary duty in conveying the easements without obtaining compensation, and the plaintiffs requested an accounting of the trust property and declaratory relief. After dismissing the parent plaintiffs for lack of standing and joining the

_____

[1]The parties use this designation for the group of easements at issue in this case. The number "09" is a State Land Department code used to identify easements of state trust lands that were granted to government bodies without compensation to the trust.

5

various easement holders as defendants, the trial court dismissed the complaint on the ground that the claims were barred by the equitable doctrine of laches. The school districts appealed. We affirm, but for a different reason than that stated by the trial court.

## I.    Factual and Procedural Background

¶2          In reviewing a trial court's order granting a motion to dismiss, we assume the facts alleged in the complaint are true. *Doe ex rel. Doe v. State*, 200 Ariz. 174, ¶ 2, 24 P.3d 1269, 1270 (2001). On October 15, 2004, individual plaintiffs, as residents of Arizona and parents of public school children, sued the State Defendants, alleging they had breached their duties as trustees of the state land trust by granting easements across state trust lands without obtaining compensation. In their prayer for relief, the plaintiffs requested an accounting, a declaration that the state had disposed of trust property without compensation in violation of the Enabling Act, rendering the dispositions null and void, and compensation to the trust for the value of the property.

¶3          The State Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), Ariz. R. Civ. P., arguing the plaintiffs lacked standing, failed to file a notice of claim, and failed to file their lawsuit within the applicable statute of limitations period. They also separately moved to join all grantees of the disputed easements as indispensable parties pursuant to Rule 19, Ariz. R. Civ. P. The plaintiffs then filed an amended complaint, adding the school districts as plaintiffs and amending their claim for breach of fiduciary duty to

6

include a request for an order requiring the state to obtain compensation for the trust from the easement holders or, alternatively, an order requiring the state to compensate the trust.

¶4 The trial court denied the State Defendants' motion to dismiss, finding the action had been filed within the limitations period prescribed for claims against public entities, *see* A.R.S. § 12-821, and that the notice of claim statute did not apply to the plaintiffs' claims, *see* A.R.S. § 12-821.01. The court also found the school district plaintiffs had standing to sue, while the parent plaintiffs did not. The court then granted the State Defendants' motion to join the individual easement grantees as defendants (collectively the "county-municipal defendants"), over the plaintiffs' objection.[2] The school districts filed a second amended complaint to include the county-municipal defendants, who answered the complaint and filed motions to dismiss based variously on the statute of limitations, notice of claim statute, laches, standing, justiciability of the claim, and the bona fide purchaser for value doctrine. The trial court specifically addressed each of the grounds on the merits and dismissed the lawsuit based on its conclusion that the claims were barred by laches. The

[2]The county-municipal defendants participating on appeal include: Apache County, Cochise County, Coconino County, Graham County, Greenlee County, Maricopa County, Mohave County, Navajo County, Pima County, Pinal County, Santa Cruz County, Yavapai County, Yuma County, Maricopa County Flood Control District, Magma Flood Control District, Arizona Department of Transportation (ADOT), Town of Carefree, Town of Gila Bend, City of Globe, City of Flagstaff, City of Glendale, Town of Marana, City of Peoria, City of Phoenix, City of Scottsdale, City of Sierra Vista, City of Tempe, and City of Tucson. The plaintiffs' second amended complaint also joined as defendants: Gila County, La Paz County, Chino Valley Irrigation District, Town of Prescott, Union Pacific Railroad Co., and the United States Bureau of Reclamation. However, the plaintiffs voluntarily dismissed these defendants before the trial court ruled on the motions to dismiss.

7

court rejected all other grounds for dismissal raised by the defendants. The plaintiffs have appealed the court's order dismissing the case on laches grounds, and the defendants have filed various cross-appeals and asserted cross-issues, challenging the court's denial of the motions on the additional grounds. Because the trial court considered and ruled on each additional ground raised by the defendants, any of which would be dispositive of this case and support the court's judgment below, we consider them all. *See Bowman v. Bd. of Regents*, 162 Ariz. 551, 558-59, 785 P.2d 71, 78-79 (App. 1989) (no cross-appeal necessary unless issues raised would attack lower court's judgment). We have jurisdiction pursuant to A.R.S. § 12-2101.

## Discussion

**II.     The Enabling Act**

A.     History and Purpose

**¶5**          As a condition of its admission to the United States, Arizona was required to accept and adopt the terms of the New Mexico-Arizona Enabling Act. *Kadish v. Ariz. State Land Dep't*, 155 Ariz. 484, 486-87, 747 P.2d 1183, 1185-86 (1987) (hereinafter "*Asarco I*"). Under the Enabling Act, the United States granted to Arizona, in trust, four sections of land from each township—approximately ten million acres—to be used exclusively for the support of schools and other public institutions. Enabling Act §§ 24, 25, 28; *Forest Guardians v. Wells*, 201 Ariz. 255, ¶ 2, 34 P.3d 364, 365 (2001); *Asarco I*, 155 Ariz. at 486, 747 P.2d at 1185. The Act placed significant restrictions on the disposition of trust

8

lands, representing a "complete and absolute departure from the enabling acts under which other states were admitted." *Murphy v. State*, 65 Ariz. 338, 350, 181 P.2d 336, 344 (1947).

¶6            Before the adoption of the New Mexico-Arizona Enabling Act, twenty-three states had entered the Union through various acts of admission. *Id.* Like Arizona, these states had been granted land for specifically delineated purposes, but unlike Arizona, the state legislatures were not restricted in how they could dispose of the land or collect and maintain the trust assets for the benefit of the trust beneficiaries. *Id.* This discretion resulted in "dissipation of the funds by one device or another, sanctioned or permitted by the legislatures of the several states, [and] left a scandal in virtually every state." *Id.* In fact, the lands were so "poorly administered, so unwisely invested and dissipated, that Congress concluded to make sure, in light of experiences of the past, that such would not occur in the new states of New Mexico and Arizona." *Id.*

¶7            To ensure that the purposes of the trust would be protected in Arizona, Congress included § 28 in the Enabling Act "to guarantee, by preventing particular abuses through the prohibition of specific practices, that the trust received appropriate compensation for trust lands." *Lassen v. Arizona ex rel. Ariz. Highway Dep't*, 385 U.S. 458, 464 (1967) (hereinafter "*Lassen II*"). Section 28 prohibits the disposition of any trust land except to "the highest and best bidder at public auction" and requires an appraisal of the value of the land before there can be a disposition of the land for its "true value." *Id.* at 462. It also precludes any disposition for consideration less than the value of the

9

property. *Id.* As a consequence for failing to abide by its provisions, the Enabling Act provides that any disposition not made in "substantial conformity with the provisions of this Act shall be null and void, any provisions of the constitution or laws of the . . . State to the contrary notwithstanding." Enabling Act § 28.

¶8 Thus, Congress clearly "intended the Enabling Act to severely circumscribe the power of state government to deal with the assets of the common school trust." *Asarco I*, 155 Ariz. at 487, 747 P.2d at 1186. Because the Enabling Act is federal law, it is the supreme law in Arizona, and therefore we must "strictly apply the Enabling Act's restrictions regarding disposal of school trust assets." *Id.* at 486, 488, 747 P.2d at 1185, 1187; *see also* U.S. Const. art. VI, cl. 2. However, the practical restrictions contained in the Enabling Act, particularly with regard to compensation for trust lands used by the state for a public purpose, have been a source of continuing and vigorous dispute, as the cases interpreting it illustrate.

B.    Cases Interpreting the Enabling Act

¶9 In 1937, the State Land Department began granting governmental entities easements across state trust lands for highway construction without compensating the trust for the monetary value of the easements. *Grossetta v. Choate*, 51 Ariz. 248, 250, 75 P.2d 1031, 1031-32 (1938). The first challenge to this practice occurred in *Grossetta*. There the plaintiff had argued that an easement granted across state trust lands for a county highway violated the Enabling Act because the Act did not authorize such easements. *Id.* at 251, 75

10

P.2d at 1032. Our supreme court rejected this contention, noting that for Congress to have granted so much public land as part of the trust but to then forbid the state from granting easements over it for public highways "would seem not only contrary to the wise policy of Congress, but likely also to defeat in part the very objects of the grant." *Id.* at 252-53, 75 P.2d at 1032-33. The court therefore held that, because nothing in the Enabling Act precluded the state from granting such easements, they were permissible. *Id.* at 254, 75 P.2d at 1033.

¶10 A few years after *Grossetta*, the State Land Commissioner ordered the state to surrender all highway easements it had been granted so that they could be reissued as leases with fixed rental payments for the land and royalty payments for materials. *Conway v. State Land Dep't*, 62 Ariz. 248, 249-50, 156 P.2d 901, 902 (1945). The state challenged the order, and the supreme court, finding *Grossetta* controlling, agreed with the state. *Conway*, 62 Ariz. at 253, 156 P.2d at 903. The court concluded that, although *Grossetta* had not explicitly answered the question of compensation, it was "evident . . . that th[e] court . . . had in mind the undoubted right of the state to provide for public highways, and if such highway was for a wholly public purpose, the right of the state to use such school or institutional lands for highway rights-of-way without compensation [was] inferred." *Conway*, 62 Ariz. at 254, 156 P.2d at 904. The court held that, therefore, the state was not required to compensate the trust when it granted trust lands for public highways. *Id.* at 255-56, 156 P.2d at 904.

11

**¶11** Finally, in 1964, the State Land Commissioner adopted a new rule permitting the State Land Department to grant easements for highways and material sites indefinitely "so long as [they are] used for the purpose granted after full payment of the appraised value . . . has been made to the State Land Department." *State ex rel. Ariz. Highway Dep't v. Lassen*, 99 Ariz. 161, 162, 407 P.2d 747, 747 (1965) (internal citation omitted) (hereinafter "*Lassen I*"). The State Highway Department responded by filing a writ of prohibition to prevent enforcement of the new rule. *Id.* The State Land Commissioner argued in *Lassen I* that it was a breach of trust to allow the state to use trust lands without compensating the trust. *Id.* at 164, 407 P.2d at 749. But, our supreme court disagreed.

**¶12** Relying on its previous decisions in *Grossetta* and *Conway*, the court concluded that the State Land Commissioner could not seek compensation for highway easements and material sites on trust lands. And, it confirmed two "fundamental determinations" it had made in *Conway*:

> 1. It was held that as a matter of law the grant of nonrental rights of way for the purpose of constructing the kind of roads involved in that case resulted in an over-all benefit to school trust lands.

> 2. It was held that where there is such a benefit the State Land Department must grant the requested rights of way free of charge.

99 Ariz. at 166, 407 P.2d at 750. The court also distinguished the taking of school trust lands from the taking of private land, where compensation was required. *Lassen I*, 99 Ariz. at 166-67, 407 P.2d at 750-51. The court reasoned that private lands are smaller tracts and

12

the value of the land used for the easement will be out of proportion to the easement's benefit to the land owner, but, under *Conway* and *Grossetta*, the benefit to the trust is determined by an "overall benefit to the trust lands as a whole." *Id.* Therefore, the court concluded, because "it is well known that good highways throughout a state increase the value of the lands," and the easements grant the state less than a fee estate in the land, "the trust and its beneficiaries are not deprived of anything of value." *Id.* at 166, 407 P.2d at 750. Thus, the court held, the Enabling Act imposed a duty on the State Land Commissioner to grant these easements without obtaining compensation. *Id.* at 168, 407 P.2d at 752.

¶13        The State Land Commissioner appealed to the United States Supreme Court, which granted review and reversed the long-standing rule in Arizona that compensation for easements for public highways was not required. *Lassen II*, 385 U.S. at 469. The Supreme Court noted the Enabling Act was ambiguous and did not address the "conditions or consequences of the use by the State itself of the trust lands for purposes not designated in the grant." *Id.* at 461. It then narrowly defined the issue as "what standard of compensation Arizona must employ to recompense the trust for the land it uses."[3] *Id.*

¶14        In *Lassen II*, the Highway Department argued that, under the rules promulgated by the State Land Department, no actual compensation was required because

---

[3]The Court also considered whether the state was required to offer public notice and sale when seeking trust land for the state highway program, but this issue is not relevant for our discussion here. *Lassen II*, 385 U.S. at 461-62.

enhanced value could be presumed. *Id.* at 465. The United States, as amicus curiae, advocated a similar position, except that it suggested enhanced value could be prospectively calculated, rather than presumed, and used to offset the amount that would be owed to the trust. *Id.* The Supreme Court rejected both positions, concluding that "the terms and purposes of the [Enabling Act] do not permit Arizona to diminish the actual compensation, meaning thereby monetary compensation, payable to the trust by the amount of any enhancement in the value of the remaining trust lands." *Id.* at 466.

¶15 In reaching this conclusion, the Court examined the requirements of the Enabling Act in some detail. It noted that the Act "unequivocally demands" that the trust receive the full value of transferred lands and that the compensation be used exclusively for the purposes of the land trust. *Id.* at 466-67. The Court reviewed the legislative history of the Act to elucidate the purpose of these restrictions, focusing on the increased rigidity of these types of legislation as more states were admitted to the Union. *Id.* at 467-68. Ultimately, the Court found that both the presumption and the particularized showing of enhanced value were insufficient to satisfy the requirements of the Enabling Act, because "the purposes of Congress require that the Act's designated beneficiaries 'derive the full benefit' of the grant[,]" and neither method could "adequately assure fulfillment of that purpose, particularly in the context of lands that are as variegated and far-flung as those comprised in this grant." *Id.* at 468 (internal quotation omitted). Therefore, the Court held

14

the state "must actually compensate the trust in money" for easements obtained over state trust lands. *Id.* at 469.

¶16 However, in a footnote to its opinion, the Court noted:

> We are informed by counsel that over a period of years Arizona has obtained the use of large areas of trust lands on bases that may not have accorded with those set forth in this opinion. We wish to make it plain that we do not reach either the validity of such transfers or the obligations of the State, if any, with respect thereto.

*Id.* at 470 n.22. Thus, the Court intentionally left for another day the issues of whether the state was required to seek compensation for the easements made prior to its decision in *Lassen II* and whether such easements were necessarily void for having been granted without compensation. The Court remanded the case for further proceedings not inconsistent with its opinion. On remand, our supreme court vacated its writ of prohibition but did not address the issues the Supreme Court had not addressed. *State ex rel. Ariz. Highway Dep't v. Lassen*, 102 Ariz. 318, 428 P.2d 996 (1967). In the wake of *Lassen II*, the State Land Commissioner began collecting compensation for the new easements it granted. But the issue of whether compensation is required for the approximately 900 easements granted prior to the decision has remained unanswered. That issue, and the validity of those 900 easements, are now squarely before us.

## III. Standard of Review

¶17 Motions to dismiss are generally disfavored because they require an analysis of the legal sufficiency of the complaint without the benefit of a developed factual record.

15

*Forum Dev., L.C. v. Ariz. Dep't of Revenue*, 192 Ariz. 90, 93, 961 P.2d 1038, 1041 (App. 1997). As noted above, on appeal from a motion to dismiss, we assume the facts alleged in the complaint are true and will affirm the dismissal "only when it appears certain that the plaintiff would not be entitled to relief under any theory given the facts and claims alleged." *Id.* ¶ 20; *Newman v. Maricopa County*, 167 Ariz. 501, 503, 808 P.2d 1253, 1255 (App. 1991). To this end, we review the trial court's dismissal of a complaint for an abuse of discretion, but we review de novo any questions of law. *Forum Dev.*, 192 Ariz. at 93, 961 P.2d at 1041.

## IV.   Standing

**¶18**          As a threshold matter, we address the defendants' argument that the trial court erred in denying their motion to dismiss on the ground that the school district plaintiffs lacked standing to bring this lawsuit. *See Sears v. Hull*, 192 Ariz. 65, ¶ 9, 961 P.2d 1013, 1016 (1998). The trial court concluded that the codification of Proposition 300, which created the classroom site fund directing certain trust funds directly to schools, "has created a direct legal right in plaintiffs to receive income from state trust lands," and the plaintiffs' "right to said income is different than the rights of the public-at-large." *See* A.R.S. § 15-977 (creation of classroom site fund). The court therefore found the plaintiffs had standing to bring their claims.

**¶19**          On appeal, the State Defendants, the City of Peoria (Peoria) and the City of Scottsdale (Scottsdale) argue the trial court erred when it concluded that Proposition 300

16

had conferred standing on the plaintiffs for violations occurring prior to its enactment. Additionally, they assert the Enabling Act created a charitable trust, which the plaintiffs do not have standing to enforce, because they are "putative beneficiaries" who do not have a special interest in the trust. *See Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, ¶¶ 22-23, 91 P.3d 1019, 1024 (App. 2004). Finally, the defendants generally assert that the plaintiffs lack standing because they have failed to identify a particularized injury that differentiates the harm they have suffered from that of the general public. The plaintiffs counter that § 28 of the Enabling Act, which expressly confers standing, and Arizona case law that interprets the Act and implicitly recognizes the standing of individual taxpayers and public interest groups to bring lawsuits under the Act, provide the basis for their standing in this case.

¶20 Whether a party has standing to sue is a question of law this court reviews de novo. *Id.* ¶ 15. Because Arizona has no counterpart to the federal "case or controversy" requirement, "'the question of standing . . . is not a constitutional mandate.'" *Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, ¶ 6, 108 P.3d 917, 919 (2005), *quoting Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). Instead, Arizona courts are governed primarily by "questions of prudential or judicial restraint," which "insure that our courts do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries." *Armory Park*, 148 Ariz. at 6, 712 P.3d at 919. Nevertheless, Arizona maintains a "rigorous standing

17

requirement." *Fernandez*, 210 Ariz. 138, ¶ 6, 108 P.3d at 919. Therefore, the "plaintiff must allege a distinct and palpable injury," and "[a]n allegation of generalized harm that is shared alike by all or a large class of citizens generally is not sufficient." *Sears v. Hull*, 192 Ariz. 65, ¶ 16, 961 P.2d 1013, 1017 (1998).

¶21 Section 28 of the Enabling Act specifically charges the United States Attorney General with the duty of enforcing the state land trust, but the Act also expressly provides that "[n]othing herein contained shall be taken as in limitation of the power of the State or of any citizen thereof to enforce the provisions of this Act." The precise right conferred by this language has generally not been discussed in case law interpreting the New Mexico-Arizona Enabling Act. *See, e.g., Forest Guardians v. Powell*, 24 P.3d 803, 808-09 (N.M. App. 2001) (acknowledging language of § 10 of Enabling Act, New Mexico's equivalent to § 28, but not addressing scope or meaning). However, in Arizona it is abundantly clear that our courts have interpreted § 28 to permit members of the public to sue for violations of the Enabling Act.

¶22 First, in *Grossetta v. Choate*, 51 Ariz. 248, 249, 75 P.2d 1031, 1031 (1938), our supreme court permitted an individual to contest the Pima County Board of Supervisors' planned right-of-way through a parcel of land. It is unclear from the opinion what connection, if any, the individual had to the parcel of land at issue, but it is clear that on appeal he abandoned whatever personal claims he had made below and was permitted to

18

argue generally that the proposed right-of-way violated the dispositional requirements of the Enabling Act and was therefore void. *Id.*

¶23　　　Then, in *Asarco I*, our supreme court permitted the plaintiffs, whom it described as "taxpayers who allege that their taxes support public education in Arizona," and the Arizona Education Association to maintain a lawsuit alleging that a statute governing mineral leases on state lands was void because it failed to comply with the Enabling Act. 155 Ariz. at 485, 747 P.2d at 1184. The plaintiffs did not assert they had sustained personal harm, claiming only that the regulations did not appropriately compensate the trust for the value of minerals extracted. *Id.* at 486, 747 P.2d at 1185. When the court found the regulations violated the Enabling Act, the defendants appealed to the United States Supreme Court, where they argued the lawsuit should be dismissed because the plaintiffs lacked standing to bring it. *Asarco Inc. v. Kadish*, 490 U.S. 605, 612 (1989) (hereinafter "*Asarco II*"). In analyzing this question, the Court noted that the plaintiffs "d[id] not allege any special circumstances or exceptions that would confer standing upon them. Instead, they have simply asserted that [an] Arizona statute governing mineral leases has 'deprived the school trust funds of millions of dollars thereby resulting in unnecessarily higher taxes.'" *Id.* at 613. It continued, "The claims raised here, moreover, are the kind of generalized grievances brought by concerned citizens that we have consistently held are not cognizable in the federal courts." *Id.* at 616.

¶24     Nevertheless, the Court recognized that "the constraints of Article III [of the United States Constitution] do not apply to state courts," and "[a]lthough the state courts are not bound to adhere to federal standing requirements, they possess the authority . . . to render binding judicial decisions that rest on their own interpretations of federal law." *Id.* at 617. The Court therefore concluded the Arizona courts' determinations that the taxpayer-plaintiffs had standing was binding and did not undermine the jurisdictional basis for the courts' decisions below. *Id.* at 617-18.

¶25     Later, in *Jeffries v. Hassell*, 197 Ariz. 151, ¶ 1, 3 P.3d 1071, 1072 (App. 1999), Division One of this court permitted, without comment, "Arizona taxpayers with children in Arizona public schools" to bring a lawsuit alleging the State Land Department's policies regarding grazing leases on state trust lands violated the Enabling Act. Again, the plaintiffs did not allege they had sustained personal injury other than the fact the state had failed to maximize trust revenue. *Id.*

¶26     In each of these cases, the plaintiffs had suffered no harm beyond that suffered by the general public, yet our courts permitted the lawsuits to proceed. We acknowledge that in none of the cases did the courts actually address the issue of standing, but it is apparent that *Asarco II* did not in subsequent cases alter our courts' permissive approach to standing to enforce the Enabling Act. To the contrary, in these cases the courts prominently and explicitly acknowledged that the lawsuits were being brought by citizens and public interest groups who had not alleged a personal injury.

20

¶27 In light of this Arizona case law, we are not persuaded by the New Mexico authority on which the defendants rely. The federal land grant at issue in *Board of Education v. School District No. 5*, 157 P. 668 (N.M. 1916), does not appear to have contained a provision permitting citizens of the state to enforce the grant as the Enabling Act does. Therefore, its analysis and conclusion that the plaintiff school districts lacked standing is inapplicable. And, in *Forest Guardians v. Powell*, 24 P.3d at 814, a case involving the Enabling Act, the New Mexico Supreme Court concluded that individual taxpayers and nonprofit associations did not have standing to sue. However, the standing of school districts was not an issue in that case, and the court, in fact, explicitly noted that school districts would perhaps have a stronger claim of standing than general taxpayers. *Id.*

¶28 Finally, we note the plaintiffs are school districts whose interests in the state land trust are far more defined than the taxpayers and parents of children attending public schools, whose standing in *Asarco I* and *Jeffries* went unchallenged. Section 24 of the Enabling Act specifically granted the state certain lands in trust to be used for the "support of the common schools." Therefore, unlike those plaintiffs, school districts, as the modern incarnation of the common schools, are part of a named, albeit broad, class of trust beneficiaries. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 629 (10th Cir. 1998) ("Today's public school districts are the direct political descendants of those 19th Century 'common schools.'").

21

¶29	Contrary to the defendants' arguments, the fact that the legislature may have discretion in administering trust funds to the school districts in a particular year does not render them "putative beneficiaries" or alter this analysis. *See* Restatement (Second) of Trusts § 214 cmt. a (if trustee has discretion to select one or more members of definite class as beneficiaries, any member of class can sue trustee prior to selection), § 391 (persons with special interest in charitable trust may sue for its enforcement).[4] *Cf. Price v. Akaka*, 928 F.2d 824, 827, 827 n.2 (9th Cir. 1990) (individual native Hawaiian had standing to enforce Hawaii Admission Act even though receipt of benefit under trust subject to discretion and redress of alleged wrong would not necessarily benefit native Hawaiian plaintiff). Similarly, the defendants' contention that the plaintiffs are mere conduits of money is also unavailing given the Enabling Act's explicit identification of "common schools" and not the general public as the beneficiaries for whose support state trust lands are to be maintained. *See* Enabling Act § 24.

¶30	Furthermore, to the extent Scottsdale argues the plaintiffs lack standing because they did not first attempt to have the United States Attorney General bring their claim, they provide no authority to suggest this procedural step is a prerequisite to suing. *See* Ariz. R. Civ. App. P. 13(a)(6), (b) (appellate briefs "shall contain . . . citations to the

[4]Although we do not decide whether the land trust constitutes a charitable trust, we note the same principles apply in that context as well. *See Schalkenbach*, 208 Ariz. 176, ¶ 23, 91 P.3d at 1024 (current beneficiary has special interest sufficient to enforce charitable trust).

22

authorities . . . relied on"). The Enabling Act contains no such requirement, and in none of the Enabling Act case law cited by the parties has a court determined a plaintiff lacked standing for failure to first alert the Attorney General to their claim.

¶31 Therefore, we find nothing in our case law to support the defendants' argument and agree with the two members of our supreme court who concluded that the Enabling Act contemplates that "citizens of the state may act for the benefit of the state as a whole in enforcing the dispositional restrictions of § 28." *Asarco I*, 155 Ariz. at 498, 747 P.2d at 1197 (2-2 divided court). Because we conclude our prior case law and the Enabling Act confer standing on the school districts, we need not determine whether Proposition 300 also confers standing on these plaintiffs or whether the state land trust is a charitable trust. *See Forszt v. Rodriguez*, 212 Ariz. 263, ¶ 9, 130 P.3d 538, 540 (App. 2006) (appellate court may affirm trial court if correct for any reason).

## V. Failure to State Claims for Relief

¶32 We next address the defendants' argument that the trial court erred in denying the motion to dismiss because the plaintiffs failed to state valid claims for relief. In the proceedings below, the defendants argued the plaintiffs had failed to state claims upon which relief could be granted because the relief sought was impossible or impractical. The trial court rejected this argument. We review de novo the trial court's ruling on a motion to dismiss for failure to state a claim. *Phelps Dodge Corp. v. El Paso Corp.*, 213 Ariz. 400, ¶ 8, 142 P.3d 708, 710 (App. 2006).

**¶33** On appeal, the Arizona Department of Transportation (ADOT) argues the plaintiffs have failed to state claims upon which relief can be granted because they will derive no benefit from the lawsuit even if they ultimately prevail. First, ADOT argues the law does not recognize a claim for compensation under void easements; therefore, the plaintiffs could not be entitled to any relief because if the easements are, in fact, void, then it and the other occupiers of the land would be licensees and invitees who would be entitled to compensation for any improvements they have made upon the land. However, neither ADOT nor any other defendant asserted this argument below. We therefore decline to consider it on appeal. *See Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 501, 851 P.2d 122, 126 (App. 1992).[5]

**¶34** Second, ADOT argues that the plaintiffs failed to state a claim for declaratory relief because they will not receive a "discrete, tangible benefit" even if they are successful. They contend that because a "declaration voiding the '09 easements would not result in any monetary benefit to the plaintiffs" and would result in the easements reverting back to the State Land Department, "[t]here is no imaginable way in which this would benefit the plaintiffs."

---

[5]Additionally, we note the plaintiffs' claim for monetary relief is not specious, as ADOT contends. If it is determined that the conveyances are not void, but compensation was nonetheless required for the 09 easements and was never obtained, the defendants could be ordered to compensate the trust. This remedy would bring additional funds to the trust which the trustee has thus far not sought to obtain. Because the plaintiffs are beneficiaries of the trust, this results in a benefit to them as well.

¶35    Whether a plaintiff has stated a valid claim for declaratory relief is a question of law we review de novo. *See Gamez v. Brush Wellman, Inc.*, 201 Ariz. 266, ¶ 4, 34 P.3d 375, 378 (App. 2001). "In order for there to be a justiciable controversy for the purposes of [a] declaratory judgment . . . there must be an assertion of a right, status or legal relation in which the plaintiff has a definite interest and a denial of [the right] by the opposing party." *Samaritan Health Svcs. v. City of Glendale*, 148 Ariz. 394, 395, 714 P.2d 887, 888 (App. 1986); *see also Hunt v. Richardson*, 216 Ariz. 114, ¶ 37, 163 P.3d 1064, 1075 (App. 2007). The plaintiffs have asserted that the State Land Commissioner and State Land Department have permitted ADOT and the other county-municipal defendants to occupy and use school trust lands without compensation for the use of the land, in violation of the Enabling Act and *Lassen II*. We have already determined that the plaintiffs are current beneficiaries of the school land trust; therefore, they unquestionably have a justiciable interest in whether the trust has been deprived of funds to which it was entitled. *See In re Hayes*, 129 Ariz. 174, 176, 629 P.2d 1010 (App. 1981), *quoting* Restatement (Second) of Trusts § 200 (only beneficiary may sue for breach of trust). Therefore, the trial court did not err in concluding the plaintiffs had stated a claim for declaratory relief.

¶36    Separately, the State Defendants argue the plaintiffs have not asserted a valid claim that they are entitled to an accounting of the trust property. The plaintiffs contend they are entitled to an accounting based on private trust principles that have generally been applied in state land trust cases. *See Asarco I*, 155 Ariz. 484, 487, 747 P.2d at 1186;

25

*Jeffries*, 197 Ariz. 151, ¶ 6, 3 P.3d at 1074; *Skamania County v. State*, 685 P.2d 576, 580 (Wash. 1984); *State v. Univ. of Alaska*, 624 P.2d 807, 813 (Alaska 1981). However, contrary to the plaintiffs' assertion, these cases do not state that every duty owed by private trustees to their beneficiaries applies between the state and land trust beneficiaries.

¶37 The right of a beneficiary of a private trust to demand an accounting is conferred by statute. A.R.S. § 14-7303. The purpose of this right is to enable the beneficiary to examine the trustee's administration of the trust and ensure that the trustee is complying with the obligations under the trust. *See Estate of P.K.L. v. J.K.S.*, 189 Ariz. 487, 492-93, 943 P.2d 847, 852-53 (App. 1997). There is no comparable statute providing that beneficiaries of the state land trust are entitled to accountings of the land trust on demand; nor does the Enabling Act contain such a right. However, the state land trust is not without other protections equivalent to those afforded by a formal accounting under a private trust.

¶38 As a state agency, the State Land Department is subject to substantial oversight by both the public and the legislative and executive branches of government. State agencies are required to maintain records that are open to all members of the public, including the plaintiffs. A.R.S. §§ 39-121, 39-121.01. Additionally, the Joint Legislative Audit Committee and State Auditor General both critically review the activities of state agencies, including the State Land Department. A.R.S. §§ 41-1279, 41-1279.01; *Asarco I*, 177 Ariz.

26

at 330, 868 P.2d at 343 (citing auditor report as evidence of losses to state land trust due to provisions of state mining leases).

¶39    We acknowledge the plaintiffs' argument that despite this level of oversight, in the past, problems with the trust administration have not been ameliorated until a third party has brought a cause of action on behalf of the trust beneficiaries. *See, e.g., Asarco I*, 177 Ariz. at 330, 868 P.2d at 343. However, such problems are not unique to the state land trust and we fail to see how requiring the State Land Department to render a formal accounting upon request will prevent this problem from occurring in the future. As *Asarco I* demonstrates, the information available in the public records is more than sufficient to inform the public about the status of the trust and its administration. Furthermore, it appears from the record that the plaintiffs have actually received all the information that would have been contained in an accounting. They were given the opportunity to review all the public records pertaining to the 09 easements, and the State Land Department provided them with a report on the easements in September 2003. The plaintiffs have not asserted that this information was not sufficient or otherwise incorrect. We therefore conclude that beneficiaries of the state land trust are not entitled to a formal accounting of the type requested by plaintiffs, and the trial court erred in failing to dismiss this claim on these grounds.

## VI.    Notice of Claim Statute

¶40    The State Defendants next argue the trial court erred in finding that § 12-821.01, the notice of claim statute, did not apply to this case.  They assert, as they did below, that although the plaintiffs do not seek money damages, the notice of claim statute should still be applied to them because of the cost to the state of litigating the validity of the 09 easements.

¶41    Preliminarily, the plaintiffs contend § 12-821.01 does not apply to their claims because they are based on express provisions of the Enabling Act, a federal statute the provisions of which cannot be overridden by state law.  They rely on *Felder v. Casey*, 487 U.S. 131 (1988), and *Mulleneaux v. State*, 190 Ariz. 535, 950 P.2d 1156 (App. 1997), as authority for this proposition.  However, their reliance on *Felder* and *Mulleneaux* is misplaced.  Unlike those cases, which concerned causes of action under 42 U.S.C. § 1983, no statutorily created federal cause of action is at issue in this case.  *See Jones v. Brush*, 143 F.2d 733, 735 (9th Cir. 1944) (Enabling Act did not create federal cause of action).  The analysis in *Felder* is thus inapposite.

¶42    Nonetheless, on state law grounds, we find § 12-821.01(A) inapplicable to the plaintiffs' claims, with the exception of their alternative request for monetary relief in their claim for breach of fiduciary duty. Section 12-821.01(A) provides that "[p]ersons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service . . . within one hundred eighty days after the cause of action accrues."  Failure to timely file a notice of claim requires dismissal of the case.

28

*Martineau v. Maricopa County*, 207 Ariz. 332, ¶ 15, 86 P.3d 912, 915 (App. 2004); *see also Blauvelt v. County of Maricopa*, 160 Ariz. 77, 80, 770 P.2d 381, 384 (App. 1988). However, this court has found the statute inapplicable to claims for injunctive and declaratory relief. *See State v. Mabery Ranch, Co.*, 216 Ariz. 233, ¶ 48, 165 P.3d 211, 223 (App. 2007) (injunctive relief); *Martineau*, 207 Ariz. 332, ¶ 24, 86 P.3d at 917 (declaratory relief).

¶43　　In *Martineau*, Division One of this court noted that the purposes of the notice of claim statute were "to allow the public entity to investigate and assess liability, to permit the possibility of settlement prior to litigation, and to assist the public entity in financial planning and budgeting." 207 Ariz. 332, ¶ 19, 86 P.3d at 915-16. The court then concluded the statutory language was inconsistent with the declaratory relief sought because, if successful, it would not directly affect the public entity's financial planning or budgeting, and there was no reasonable monetary estimate for settling the claim. *Id.* ¶¶ 19-21. Drawing from this analysis, in *Mabery Ranch*, the court concluded that the plain language of § 12-821.01(A) demonstrates that it was intended to only apply "to claims for money damages," and was not intended "to apply to claims that seek only to restrain government conduct." 216 Ariz. 233, ¶ 52, 165 P.3d 211, 223.

¶44　　We note that the plaintiffs originally filed their lawsuit solely against the State Defendants without having first filed a notice of claim. But, the relief they originally sought was generally equitable in nature and did not include a request for money damages. The

29

defendants nevertheless assert that if the plaintiffs are successful, the cost of litigating the easements affects them financially. However, this is not the type of financial impact contemplated by the statute. The purpose of the notice of claim statute is to minimize governmental liability by informing the government of the nature and magnitude of a claim for monetary damages, thereby allowing it to make an informed choice about whether to settle or pursue the litigation. *Martineau*, 207 Ariz. 332, ¶ 19, 86 P.3d at 915-16. As the court noted in *Martineau*, the statute is concerned with direct effects upon financial planning and budgeting when a public entity is confronted with liability for monetary damages. *Id.* ¶ 20. Therefore, we conclude the notice of claim statute does not apply to the plaintiffs' claims for equitable relief.

**¶45** However, in their claim for breach of fiduciary duty, the plaintiffs alternatively ask the court to compel the state to compensate the trust for the value of the 09 easements it had granted in contravention of the Enabling Act. This is a direct claim for monetary relief and does not qualify as incidental damages, which are permitted without requiring compliance with the notice of claim statute. *See Martineau*, 207 Ariz. 335, ¶ 15, 86 P.3d at 915; *Blauvelt*, 160 Ariz. at 80, 770 P.2d at 384.

**¶46** Finally, we note the county-municipal defendants were joined as indispensable parties over the plaintiffs' objections, and the plaintiffs were never required to amend their complaint to state claims against these defendants. Therefore, the trial court did not err in finding the notice of claim statute did not apply to the plaintiffs' lawsuit, with the exception

30

of their claim for money damages against the State Defendants. That claim should have been dismissed for failure to file a notice of claim pursuant to § 12-821.01.

## VII. Statute of Limitations

¶47 Next, the defendants contend the trial court erred in failing to dismiss the complaint on statute of limitations grounds. A dismissal based on the statute of limitations is only appropriate when "'it appears from the face of the complaint that the claim is barred.'" *McCloud v. State*, 217 Ariz. 82, ¶ 8, 170 P.3d 691, 694 (App. 2007), *quoting Anson v. Am. Motors Corp.*, 155 Ariz. 420, 421, 747 P.2d 581, 581 (App. 1987). In response to the State Defendants' initial motion to dismiss, filed before the county-municipal defendants had been joined, the court concluded the plaintiffs "were not aware of [the State Land Department]'s final decision about seeking payment for the 09 Easements until June, 2004," and the lawsuit was therefore timely under the statute of limitations.

¶48 Generally, a threshold issue in determining whether the statute of limitations bars a claim is the date on which the claim accrued. *See Flood Control Dist. v. Gaines*, 202 Ariz. 248, ¶ 17, 43 P.3d 196, 202 (App. 2002). The parties do not dispute that A.R.S. § 12-821 applies to this case. It provides that "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues." § 12-821. For purposes of this statute, a cause of action accrues when "the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." A.R.S. § 12-

31

821.01(B); *see Dube v. Likins*, 216 Ariz. 406, ¶ 7, 167 P.3d 93, 98 (App. 2007); *Long v. City of Glendale*, 208 Ariz. 319, ¶ 9, 93 P.3d 519, 525 (App. 2004). Although the state land trust is not a private trust, "private trust law principles . . . apply to federal land granted to the states for school purposes." *State v. Univ. of Alaska*, 624 P.2d 807, 813 (Alaska 1981) (noting *Lassen II* established applicability of private trust law to state land trusts); *see also Asarco I*, 155 Ariz. at 487-88, 747 P.2d at 1186-87; *Jeffries*, 197 Ariz. 151, ¶ 6, 3 P.3d at 1074; *Skamania County v. State*, 685 P.2d 576, 580 (Wash. 1984). Thus, applying these general principles, the plaintiffs' claims accrued when they realized or reasonably should have realized that the State Land Commissioner had failed to obtain compensation for the 09 easements. *Harris Trust Bank of Ariz. v. Superior Court*, 188 Ariz. 159, 163, 933 P.2d 1227, 1231 (App. 1996); *see also* § 12-821.01.

¶49        On appeal, the State Defendants argue the trial court erred in finding the plaintiffs' lawsuit was filed within the limitations period, and they propose three alternative dates on which the plaintiffs' claims accrued:  (1) the individual dates on which each 09 easement was first granted; (2) the date of the Supreme Court's decision in *Lassen II*; and (3) the date on which the plaintiffs first contacted the State Land Commissioner about the

status of the 09 easements, which was in June 2003.[6]  We address each of the State's alternative accrual dates in turn below.

A.    Date of original grants

¶50    The State Defendants first argue the plaintiffs' cause of action accrued on the dates each easement was originally granted.  The 09 easements were apparently granted between 1929 and 1967.  However, because two Arizona cases prior to *Lassen* had held that compensation was not required when easements were granted to other state agencies for highway purposes, and the State Land Department and State Land Commissioner had taken a similar position, the plaintiffs did not know, nor should they have known, that the trustee was in breach of the trust by failing to obtain compensation for the easements.  *See Conway*, 62 Ariz. at 248, 156 P.2d at 901; *Grossetta*, 51 Ariz. at 248, 75 P.2d at 1031.

B.    *Lassen II* decision

¶51    Next, the State Defendants contend the plaintiffs' claims accrued when *Lassen II* was decided because it put the plaintiffs on notice that the State Land Commissioner was required to obtain compensation for these easements.  They argue that, whether or not the plaintiffs ever actually read the *Lassen II* decision before 2003,

---

[6]We note the school districts argue the trial court erred in applying the statute of limitations and the doctrine of laches in this case because the State Defendants' continual failure to obtain compensation for these easements while allowing the county-municipal defendants to occupy and use trust lands is a continuing violation of the Enabling Act and the doctrine of laches cannot apply where the state's sovereign title to land is implicated. However, because we find that neither the statute of limitations nor laches bars the plaintiffs' claims, we do not address the school districts' continuing violation argument.

33

knowledge of its holding should be imputed to them because the public is presumed to know the law. To support this contention, defendants cite *Allen v. Yukins*, 366 F.3d 396 (6th Cir. 2004), and *State v. Simms*, 518 A.2d 35 (Conn. 1986), both criminal cases in which the defendants were charged with constructive knowledge of court decisions.[7] *See also State v. Morse*, 127 Ariz. 25, 31, 617 P.2d 1141, 1147 (1980) (ignorance of the law forbidding charged conduct is no defense).

¶52 Even assuming the publication of *Lassen II* placed the plaintiffs on constructive notice of its contents, that does not necessarily mean they had notice that the State Land Commissioner had failed to obtain compensation for the 09 easements. The parties do not dispute that *Lassen II* provided notice of its direct holding that the presumed enhancement in the value of remaining trust land was an insufficient method of compensating the trust for conveyances of trust land for other state purposes, and therefore the state was required to "actually compensate the trust in money." 385 U.S. at 465, 469. After *Lassen II*, it was clear that the State Land Department was required to obtain compensation for easements granted over state trust lands going forward. But, the opinion did not expressly address the issue presented in this case: whether the State Land

---

[7]Defendants also cite *International Business Machines Corp. v. United States*, 38 Fed. Cl. 661 (1997), which quotes a treasury regulation stating that interpretations of foreign law are not reasonable if the taxpayer has constructive notice, including published court decisions, that his interpretation is likely to be erroneous. 38 Fed. Cl. at 668. However, the case does not apply the constructive notice part of the statute. *Id*. at 669, In any event, the fact that constructive notice was statutorily imposed in that case is irrelevant here, where there is no like statute explicitly imposing constructive notice of other law.

34

Commissioner was required to obtain compensation for easements granted before the Court decided *Lassen II* and then failed to do so after it was decided.

¶53 As we noted above, the Court's only reference to this issue can be found in footnote 22 of the opinion, which reads:

> We are informed by counsel that over a period of years Arizona has obtained the use of large areas of trust lands on bases that may not have accorded with those set forth in this opinion. We wish to make it plain that we do not reach either the validity of any such transfers or the obligations of the State, if any, with respect thereto.

385 U.S. at 469 n.22. The defendants contend this footnote "provided notice that there were existing easements of the '09' easement variety," ones that had been obtained without compensation, and, "had [the plaintiffs] simply inquired [in 1967], they could have learned the precise status of all of the '09 easements." Furthermore, they contend, all of the records were public, so the plaintiffs could have obtained them at any time.

¶54 First, we agree with the plaintiffs that footnote 22 did little more than expressly note the limited nature of the issues the Court was deciding. It did not "put the plaintiffs, or any other beneficiary of the trust, on notice that the State Land Department did not intend to abide by [the decision]." Contrary to the defendants' suggestion, the footnote does not signify that there were, in fact, uncompensated easements. It states only that such easements "may" exist. In addition, the footnote "plainly" indicates that the Court's opinion does not reach the issues concerning what obligations the state might have with regard to compensation for the 09 easements or the validity of uncompensated conveyances.

35

Although the Court essentially acknowledged the issues, it specifically declined to decide them. We thus fail to see how *Lassen II* put the plaintiffs on notice that the State Land Commissioner had actually failed to collect compensation for the 09 easements prior to the decision.

¶55 But, even assuming the plaintiffs were in possession of all the facts necessary to file a claim for general accrual of claim purposes after *Lassen II*, a "distinction exists between the point in time when a justiciable controversy arises which permits the filing of a declaratory relief action, and when an action accrues for purposes of a period of limitations." *W. Cas. & Sur. Co. v. Evans*, 130 Ariz. 333, 336, 636 P.2d 111, 114 (App. 1981). To trigger the statute of limitations for declaratory relief purposes, there must be some affirmative conduct by the plaintiff or defendant that takes the claim out of "the realm of mere possibility" and creates an "'actual controversy.'" *W. Cas. & Sur. Co.*, 130 Ariz. at 337, 636 P.2d at 115. *See La Canada Hills Ltd. P'ship v. Kite*, 217 Ariz. 126, ¶¶ 3, 9-10, 171 P.3d 195, 197-99 (App. 2007) (where declaratory action arose from failure of partner to make payments more than ten years prior to filing of action, statute of limitations accrued upon cessation of partnership dealings, not upon failure to make payments); *Sende Vista Water Co. v. City of Phoenix*, 127 Ariz. 42, 47-48, 617 P.2d 1158, 1163-64 (App. 1980) (despite contingency in contract, claim for declaratory relief did not accrue for statute of limitations purposes until contingency failed to occur and court entered judgment against appellees). *See also Planned Parenthood Ctr. of Tucson v. Marks*, 17 Ariz. App. 308, 310,

497 P.2d 534, 536 (1972) (action for declaratory judgment requires "actual controversy which must be real and not theoretical"); *Land Dep't v. O'Toole*, 154 Ariz. 43, 47, 739 P.2d 1360, 1365 (App. 1987) (justiciable controversy requires assertion of legal interest and "*assertion of the denial of it by . . . other party*").

¶56　　　　In *Western Casualty*, Evans had been injured in a car accident, and in a subsequent malpractice action the jury found that her treating surgeon, Dr. Fridena, had committed malpractice in treating her leg. *Id.* at 334-35, 636 P.2d at 112-13. Western Casualty defended Fridena in the lawsuit under a reservation of rights, but three months after the jury rendered a verdict in Evans's favor, it filed an action for a declaratory judgment that it was not liable to Fridena's estate for coverage on the date the malpractice had occurred. *Id.* Evans and Fridena asserted statute of limitations and laches defenses, claiming Western Casualty's claim had accrued at the time the lawsuit against Fridena was filed because the malpractice had occurred nine years before, and it was aware of the claim against its insured. *Id.* at 335, 636 P.2d at 113. Division One disagreed, noting:

> As a legal representative of the insured, [Fridena's estate] could have brought a declaratory judgment action from the moment a justiciable controversy existed. We find that a justiciable controversy existed between Fridena and [Western Casualty] when [it] notified Fridena it was undertaking her representation under a reservation of right. From that point on, either party could have initiated a declaratory judgment action to clarify the coverage issue, but . . . neither did so. However, the fact that either party could have sought a declaration regarding coverage as of the filing of the reservation of right does not mean that the action accrued at that time for statute of limitation purposes.

37

. . . .

> "We believe that in cases where, as here, all determinative facts giving rise to the potential policy coverage dispute have occurred prior to the initial demand upon the insurance company, no actual controversy arises among the parties until such time as the issuing company is called upon to either pay or defend a claim on behalf of its insured under the terms of the policy in question. Since an actual controversy is required as a condition precedent to the institution of an action seeking a declaration of rights . . . no such action can accrue until such time. Until the insurance company is called upon to defend or pay the claim, the entire matter is within the realm of mere possibility, and parties ought not be placed in the position of failing to act at their peril in such unpredictable circumstances."

*Id.* at 336-37, 636 P.2d at 114-15, *quoting Gibralter Ins. Co. v. Varkalis*, 263 N.E.2d 823, 826 (Ill. 1970) (internal citations omitted).

¶57 We believe the same reasoning applies here. Although *Lassen II* may have notified the plaintiffs of the *potential for* a breach of trust in the period after the Supreme Court's decision, the State Land Commissioner's breach was only within "the realm of mere possibility." It was unclear what impact, if any, *Lassen II* would have on the validity of the 09 easements, and, at the time, there was no indication the Commissioner did not intend to seek compensation for the 09 easements or otherwise address the issue pursuant to the Court's holding. Thus, *Lassen II*, standing alone, did not create an "actual controversy" sufficient to trigger the statute of limitations.

¶58 The remainder of the defendants' arguments focus on the plaintiffs' responsibilities to monitor the trustee's actions after *Lassen II* was decided. Essentially,

they argue the plaintiffs should be charged with constructive notice of the public records and the State Land Commissioner's actions in the post-*Lassen II* period. However, unlike constructive notice of the law, public records only serve as constructive notice to those who are bound to search them. *See Mountain States Tel. & Tel. Co. v. Kelton*, 79 Ariz. 126, 130-31, 285 P.2d 168, 170-71 (1955); *Long v. City of Glendale*, 208 Ariz. 319, ¶ 14, 93 P.3d 519, 525 (App. 2004). Similarly, we also do not attribute notice of government action (or inaction) in the absence of actual knowledge. *See Long*, 208 Ariz. 319, ¶ 13, 93 P.3d at 525.

**¶59** The defendants have cited no authority for the proposition that the plaintiffs, as beneficiaries of the state land trust, were obligated to search public records or otherwise keep abreast of the State Land Department's actions, nor have we found any. It is the trustee, not the beneficiaries, who has the primary duty to ensure the trust is administered according to its provisions. *See Asarco I*, 155 Ariz. 484, 487-88, 747 P.2d 1183, 1186-87 (1987) (state's duties to administer land trust those of trustee and not merely good business manager). This is true in this case, particularly because it was the State Land Commissioner's own rule the Court had upheld in *Lassen II*. Thus we cannot say the plaintiffs constructively received notice of the State Land Commissioner's potential breach from *Lassen II*, the available public records, or actions taken by the State Land Commissioner during this period in the absence of proof of actual knowledge.

C.     June 2003[8]

¶60     Finally, the State Defendants argue, as they did below, that the plaintiffs' claims accrued, at the latest, in June 2003, when they sent a letter to the State Land Commissioner inquiring about the status of the 09 easements.[9] In their motions to dismiss, the defendants argued that the plaintiffs' letter, which had "express[ed their] opinion that the '09 Easements are void and demand[ed] to know what action [the State Land Department] had taken to collect compensation for the grant" was evidence the plaintiffs were aware of their claims more than a year prior to the date the complaint was filed, October 15, 2004. In their response, the plaintiffs did not dispute this characterization of the letter, but they did allege the State Land Commissioner's response to their letter indicated he intended to resolve the issue of these easements and that he would provide plaintiffs with a copy of a status report of the easements once it was finished. After they had received the report, the plaintiffs sent another letter asking for information about the State

---

[8]Elsewhere in their brief, the defendants seem to suggest that the cause of action accrued on August 26, 2003, when the State Land Department responded to the plaintiffs' initial inquiry. However, since both dates are more than one year before the lawsuit was filed, this difference is irrelevant.

[9]The parties attached a series of letters between the plaintiffs and the State Land Commissioner to their filings below. A trial court's consideration of extrinsic evidence on a motion to dismiss generally converts it into a motion for summary judgment. *See Blanchard v. Show Low Planning & Zoning Comm'n*, 196 Ariz. 114, ¶ 11, 993 P.2d 1078, 1081 (App. 1999). However, it is not clear from the minute entry whether the court actually considered these letters, and none of the parties argues the motion to dismiss was converted into a motion for summary judgment. We therefore will continue to treat it as a motion to dismiss. *See Dube v. Likins*, 216 Ariz. 406, n.2, 167 P.3d 93, 104 n.2 (App. 2007).

Land Department's plans to obtain compensation for the easements. Between October 2003 and June 2004, the parties exchanged a series of letters and attended meetings at which the State Land Commissioner continued to state it planned to pursue compensation, and it was not until June that "it became clear" the State Land Commissioner did not intend to pursue compensation.

¶61     Although the defendants offered a different interpretation of these letters in their motion to dismiss, this merely raises an issue of fact as to when the plaintiffs "realize[d] they] ha[d] been damaged and kn[e]w[] or reasonably should [have] know[n] the cause." § 12-821.01(B). In reviewing a trial court's decision on a motion to dismiss, we are required to assume the facts alleged in the complaint are true. *Forum Dev., L.C. v. Ariz. Dep't of Rev.*, 192 Ariz. 90, 93, 961 P.2d 1038, 1041 (App. 1997). Therefore, we cannot say the trial court erred in denying the motion to dismiss because the defendants had failed to demonstrate, on the face of the complaint, that the plaintiffs' claims were barred by the statute of limitations. *See McCloud v. State*, 217 Ariz. 82, ¶ 8, 170 P.3d 691, 694 (App. 2007) (statute of limitations appropriately raised where it appears from face of complaint that claim is barred).

## VIII. Laches

¶62     In a related argument, the defendants asserted in their motions to dismiss that the plaintiffs' claims were barred by the equitable doctrine of laches. The trial court agreed with the defendants, finding the plaintiffs had unreasonably delayed after the *Lassen II*

decision in bringing their claims. The court concluded that the defendants had been prejudiced as a result of the plaintiffs' delay due to the increase in land values in the intervening forty-one years. On appeal, the plaintiffs argue that the trial court erred in finding their claims barred because the defendants failed to establish both undue delay and prejudice.

**¶63** We review a trial court's determination of whether a claim is barred by the doctrine of laches for an abuse of discretion. *Korte v. Bayless*, 199 Ariz. 173, ¶ 3, 16 P.3d 200, 201 (2001). "Absent erroneous interpretation of the law or clearly erroneous factual underpinnings, 'the [trial court's] determination can be over turned only if [its] decision represents an unreasonable judgment in weighing relevant factors.'" *McComb v. Superior Court*, 189 Ariz. 518, 525, 943 P.2d 878, 885 (App. 1997), *quoting A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992). "The defense of laches consists of two essential elements: (1) unreasonable delay, and (2) disadvantage or prejudice to the party asserting the defense. An element of this disadvantage is a change of position in good faith as a result of the delay." *Tovrea v. Umphress*, 27 Ariz. App. 513, 521, 556 P.2d 814, 822 (1976). As we concluded above, on the face of the complaint, the plaintiffs' cause of action did not accrue until June 2004. The lawsuit was filed four months later. For purposes of determining whether the claims are barred by laches, the time could not have commenced until June 2004. *See Flynn v. Rogers*, 172 Ariz. 62, 66, 834 P.2d 148, 152 (1992) ("delay must come after the party against whom the defense is asserted becomes

42

aware of or has knowledge of . . . his right"); *see also W. Cas. & Sur. Co. v. Evans*, 130 Ariz. 333, 337, 636 P.2d 111, 115 (App. 1981) (doctrine of laches does not apply prior to accrual of claim).

¶64        Laches is an affirmative defense; therefore, the burden of establishing it is on the party asserting it. *Flynn*, 172 Ariz. at 66, 834 P.2d at 152. On appeal, the defendants' arguments relate only to the passage of time since *Lassen II*, and they have not separately argued that the delay between June 2003 and October 2004 was unreasonable or that they suffered a disadvantage due to any delay within this period. *See Tovrea*, 27 Ariz. App. at 521, 556 P.2d at 822. However, they do cite a number of cases that barred claims on the ground of laches filed less than four months after the claim accrued. Three of these cases dealt with election and voting issues, which necessarily involve truncated timetables. *See Sotomayor v. Burns*, 199 Ariz. 81, ¶ 9, 13 P.3d 1198, 1200 (2000) (two-month delay barred claims because litigants in election cases must pursue such cases with all deliberate speed to preserve quality of judicial decision making); *Harris v. Purcell*, 193 Ariz. 409, ¶¶ 17-18, 973 P.2d 1166, 1169-70 (1998) (finding unreasonable six-week delay even though claim filed within statutory limitations period); *Mathieu v. Mahoney*, 174 Ariz. 456, 851 P.2d 81 (1993) (finding laches applied where plaintiff delayed more than one year after petitions circulated and claims litigated twenty-four hours after complaint filed, thereby prejudicing defendants). And in *Arizona Minority Coalition for Fair Redistricting v. Arizona Independent Redistricting Comm'n*, 366 F. Supp. 2d 887, 908-09 (D. Ariz. 2005), the

43

federal district court concluded laches applied to the plaintiffs' claim, filed weeks before critical election deadlines, because they had had numerous opportunities to raise their claim earlier. Additionally, the court found the defendants, counties, and voters had been prejudiced because they had relied on the validity of the challenged redistricting plan in preparing for the upcoming election. *Id.* at 909.

¶65 To the extent these cases suggest a claim may be barred by laches even when the period of delay is brief, we believe they are confined to the election issues they address. The defendants in this case do not assert any change in conditions occurred between June and October 2004 that would support a finding of undue delay or prejudice. They have therefore failed to sustain their burden of establishing that the doctrine of laches is applicable. The trial court thus abused its discretion in finding that laches barred the plaintiffs' claims, and in granting the motion to dismiss on that ground.

## IX. "Retroactivity" of *Lassen II*

¶66 Finally, we address what the parties have termed as the "retroactivity" of the Supreme Court's decision in *Lassen II*. The trial court concluded that it was unable on the record before it to determine whether *Lassen II* applied retroactively. The court believed resolution of the issue depended on an easement-by-easement factual assessment to determine whether retroactive application of *Lassen II* would result in inequity. On appeal, the parties essentially dispute whether the Court's holding in *Lassen II* can be used to void

44

all of the 09 easements granted before that decision for which compensation was never obtained.

¶67    The plaintiffs acknowledge their claims are based on *Lassen II*, the first case to hold that, under the Enabling Act, the state must compensate the trust for easements conveyed to state entities. And, they concede the 09 easements had been conveyed long before the *Lassen II* decision. Nonetheless, they maintain that a retroactivity analysis of *Lassen II* is not necessary or appropriate because the express language of the Act itself mandates the remedy—"conveyances not made in substantial conformity with the provisions of the Act . . . shall be null and void." In essence, plaintiffs argue that the Act thereby specifies how past conveyances, found later to violate the Act, must be treated and this court is bound by its express language.

¶68    To support this argument, the plaintiffs rely on *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 596, 790 P.2d 242, 251 (1990). In *Fain*, the question before the court was whether exchanges of school trust lands for non-trust lands violated either the Enabling Act or the Arizona Constitution. 163 Ariz. at 590-92, 790 P.2d at 245-47. The supreme court concluded the exchanges were explicitly authorized by an amendment to the Enabling Act and therefore did not violate the Act. *Id.* at 592, 790 P.2d at 247. However, the court determined that the exchanges violated Arizona's constitution because it had not been similarly amended. *Id.* at 593, 790 P.2d at 248. Then, in considering whether its decision should be applied retroactively, the court noted that only those conveyances which

45

do not comply with the Enabling Act are void, and therefore it was "not required . . . to nullify past exchanges" because they did not violate the Enabling Act. *Id.* at 596, 790 P.2d at 251. But this statement, which is clearly dicta, does not govern the outcome of this case.

¶69 Contrary to the plaintiffs' argument, the Supreme Court's conclusion in *Lassen II* was not predicated on the express language of the Enabling Act. The Court specifically noted:

> The issues here stem chiefly from ambiguities in the grant itself. . . . The Act describes with particularity the disposition Arizona may make of the lands and of the funds derived from them, but it does not directly refer to the conditions or consequences of the use by the State itself of the trust lands for purposes not designated in the grant. Of the issues which may arise from the Act's silence, we need now reach only two: first, whether Arizona is permitted to obtain trust lands for such uses without first satisfying the Act's restrictions on disposition of the land; and second, what standard of compensation Arizona must employ to recompense the trust for the land it uses.

385 U.S. at 461. In addressing the requirement for compensation, the Court stated, "[n]othing in the[ Act's] restrictions is explicitly addressed to acquisitions by the State for its other public activities; the Enabling Act, as we have noted, is entirely silent on these questions." *Id.* at 468. Unlike the hypothetical violations of the Act addressed by the *Fain* dicta, we are faced with actual conveyances that were not expressly prohibited by the Act at all. Thus, *Fain* gives us little guidance in addressing whether novel interpretations of the Act should be applied retroactively to void the decades-old 09 easements—conveyances upon which both the trust and the state entities have relied.

46

¶70         As we have discussed at length, the Court ultimately concluded that compensation was required to preserve and protect the trust. *Id.* at 469-70. However, notwithstanding this holding, the Court plainly stated it did not address the validity of or the state's obligation with respect to any nonconforming conveyances it acknowledged may already exist. *Id.* at 469 n.22. Indeed, the Court in *Lassen II* itself acknowledged that its decision had created a potential issue regarding the legal status of any easements conveyed to state entities before its opinion. *Id.* But, in declining to address that question, the Court also left the applicability of the new rule to those conveyances as an open question.

¶71         It is uncontested that *Lassen II* represented a significant shift in Enabling Act jurisprudence. As we previously discussed, during the forty years before *Lassen II* was decided, Arizona courts consistently had held that compensation was not required for easements granted to state bodies for highway purposes. *See Conway v. State Land Dep't*, 62 Ariz. 248, 249, 156 P.2d 901, 901 (1945); *Grossetta v. Choate*, 51 Ariz. 248, 250, 75 P.2d 1031, 1031-32 (1938); *see also White v. Bateman*, 89 Ariz. 110, 114, 358 P.2d 712, 714 (1962) ("The primary duty of [the supreme court] is to interpret the laws of this state so that the people may know their rights."). *Lassen II* significantly altered the legal landscape. At the time they were granted, under existing case law, no compensation was required for the 09 easements. To invalidate the easements necessarily requires applying the new rule announced in *Lassen II* to events that happened before it was decided, therefore

47

requiring a retroactive application of the case. Thus, we address whether *Lassen II* should be applied retroactively to the 09 easements.

A.     Retroactive application

**¶72**     To determine retroactivity, we apply the balancing test set out in *Fain*.[10] Civil opinions presumptively apply both retroactively and prospectively unless otherwise stated in the opinion. *Fain*, 163 Ariz. at 596, 790 P.2d at 251. In the absence of express provisions, the presumption of retroactivity can be overcome based on a three-part test, in which courts analyze whether the "decision establishes a new legal principle by overruling clear and reliable precedent . . . [, w]hether retroactive application will further or retard application of the rule . . . [, and w]hether retroactive application will produce substantially inequitable results." *Id.* There is no "magic number" of factors that must weigh in favor of

---

[10]The federal counterpart to *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 790 P.2d 242 (1990), in applying the three-factor test for determining retroactivity is *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971). We recognize *Chevron* was overruled in part by *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), insofar as *Chevron* selectively permitted the prospective-only application of a new rule of law. In *Harper* the Court held once it applies a rule retroactively to the parties before it, the rule must be applied retroactively to all cases thereafter. *Id.* at 96. For the first time at oral argument, the plaintiffs argued the Court applied the rule announced in *Lassen II* to the parties. Although the Court applied the rule to restrict the parties' future conduct, it expressly did not apply the rule retroactively to the 09 easements. We therefore apply the *Fain* test for determining retroactivity. *See Fain*, 163 Ariz. at 596, 790 P.2d at 251, *citing Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 436, 641 P.2d 1275, 1280 (1982) (approving and applying *Chevron Oil* retroactivity test); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 753-54 (1995) (reliance on prior case law "insufficient to deny retroactive application of a new legal rule (that has been applied in the case that first announced it)").

limiting a case to prospective application, but the analysis involves a balancing of all these factors. *Id.; see also Law v. Superior Court*, 157 Ariz. 147, 160-61, 755 P.2d 1135, 1149-50 (1998).

### 1. Reliance Factor

**¶73** For almost forty years before *Lassen II* was decided, the state had granted approximately 900 easements—all in reliance on the three Arizona Supreme Court cases authorizing this practice. *See Lassen I*, 99 Ariz. 161, 407 P.2d 747 (1965); *Conway*, 62 Ariz. 248, 156 P.2d 901; *Grossetta*, 51 Ariz. 248, 75 P.2d 1031. The Court's decision in *Lassen II* undoubtedly established "a new legal principle by overruling clear and reliable precedent." *Fain*, 163 Ariz. at 596, 790 P.2d at 251. Thus, this factor weighs against retroactive application of *Lassen II*.

### 2. Purpose Factor

**¶74** The next factor is the effect retroactive application would have on the application of the rule announced in the decision. This includes consideration of the history, purpose, and effect of the rule. *Fain*, 163 Ariz. at 596, 790 P.2d at 251. The rule announced in *Lassen II* was designed to protect state land trust assets from depletion and ensure that beneficiaries receive their full benefit from the trust. 385 U.S. at 469-70. Given the number of these 09 easements and length of time they existed before *Lassen II*, this factor weighs in favor of retroactive application, serving the Enabling Act's intent to benefit the beneficiaries.

### 3. Inequity Factor

**¶75** The final factor "focuses on the injustice or hardship that would result from retroactive application of the new rule." *Fain*, 163 Ariz. at 597, 790 P.2d at 252. The defendants have gone to great lengths to demonstrate the injustice and hardship of a retroactive application of *Lassen II*. As in *Fain*, there are "several hundred [transactions that] have been completed over the years, affecting thousands of acres," and, in this case, almost every county and municipality in the state. *Id.* And, just as in *Fain*, if we were to apply *Lassen II* retroactively, "[i]t would be impossible to undo all the [conveyances] that have transpired and put everyone back in his original position." *Id.*

**¶76** By voiding the conveyances, each of the approximately 900 easements would automatically revert to the State Land Department until the parties could reach some type of resolution and the easements could presumably be reinstated. During this period, the State Land Department would bear the responsibility for any public roadways and improvements located on the easements, a function it is ill-equipped to perform. The resultant administrative difficulties could unquestionably have an impact on the Arizona citizens who use these roadways on a daily basis. As our supreme court noted in *Fain*, "[i]f applied retroactively, this opinion might inflict great hardship on many innocent people, and perhaps disrupt the economy of the state." *Id.* Therefore this factor does not support retroactive application of *Lassen II*.

¶77     Giving due consideration to the purposes behind the rule announced in *Lassen II*, and the fact that the Supreme Court explicitly left open the question of retroactivity, the balance of factors weighs heavily in favor of applying *Lassen II* prospectively only. We thus conclude *Lassen II* does not apply retroactively. Therefore, the plaintiffs are not entitled to the relief they seek and have failed to state a claim upon which relief can be granted. *See* Ariz. R. Civ. P. 12(b)(6).[11]

## X. Conclusion

¶78     The plaintiffs have standing and have asserted valid claims for breach of trust and declaratory relief. They have not stated a valid claim that would entitle them to an accounting, and their claim for monetary relief against the State Defendants is dismissed. Neither the statute of limitations nor laches bars the plaintiffs' claims, and Peoria and Scottsdale are not protected from liability by the bona fide purchaser for value doctrine. Additionally, *Lassen II* does not apply retroactively to require compensation for the 09 easements. Although we disagree with the trial court's reasoning, we agree with the result, and therefore affirm. *See Wolfinger v. Cheche*, 206 Ariz. 504, ¶ 58, 80 P.3d 783, 796 (App. 2003) ( "We may affirm a trial judge for a different reason if we conclude that although the

---

[11]Because we conclude that *Lassen II* may not be applied retroactively to require compensation for the 09 easements, we need not address the argument of Peoria and Scottsdale that because their predecessor-in-interest, Maricopa County, was a bona fide purchaser for value, they are innocent third parties, and the plaintiffs' only means of seeking redress should be against the trustee.

entry of judgment on the stated grounds was inappropriate, other reasons appropriately call for judgment as entered.").

## XI.        Attorney Fees

**¶79**        As the prevailing party on appeal, the defendants have requested attorney fees and costs on appeal pursuant to A.R.S. § 12-341.01.  However, § 12-341.01 applies to contract actions and is not an appropriate basis for fees in this case.  *See In re Wilcox Revocable Trust*, 192 Ariz. 337, ¶ 21, 965 P.2d 71, 75 (App. 1998) ("We will award no attorney's fees where no [proper] basis for the award is cited to us.").  We therefore deny the requests for fees.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge