308 P.2d 932

John G. BULLA, Appellant,

v.

The VALLEY NATIONAL BANK OF PHOENIX, a national banking association, Appellee.

No. 5970.

Supreme Court of Arizona.

March 26, 1957.

86

Moore & Romley, Phoenix, for appellant.

Gust, Rosenfeld, Divelbess & Robinette, Phoenix, for appellee.

WINDES, Justice.

Arizona Airways, Inc., an Arizona public service corporation, was indebted to the Valley National Bank in the total sum of $72,652.50 secured by a lien on 114 airplane engines and certain propellers and instruments. This company was seeking from the Civil Aeronautics Board a certificate as an interstate carrier of passengers, property and mail. The CAB had announced its purpose to grant the certificate on condition that Arizona Airways improve its financial position. To enable it to comply with this condition a scheme was devised whereby the bank would lend the company an additional $30,000, making a total of $102,652.50; Arizona Airways would transfer the property securing the payment of the indebtedness to the bank in trust in accordance with a trust

agreement; and the bank would release Arizona Airways from the entire indebtedness with certain individuals to guarantee payment.

In furtherance of this scheme, a trust agreement was entered into which recited, in addition to the facts heretofore related, that certain "guarantors" in order to preserve the assets of Arizona Airways were willing to assume the entire indebtedness of $102,652.50 which was somewhat greater than the present bulk sale value of the property and that the bank upon the execution of the agreement by Arizona Airways and the guarantors was willing to advance the additional $30,000 and release Arizona Airways from its obligation to pay any of the indebtedness. After such recitals it was agreed between the bank, Arizona Airways and the guarantors that Airways would execute a promissory note payable to the bank in the amount of $102,652.50 payable on demand representing the original indebtedness plus the $30,000 additional loan and was to convey the property to the bank. Each guarantor agreed to pay the proportionate part of the obligation represented by the note set opposite their respective signatures. Arizona Airways was to be released from any obligation to pay the debt represented by the note. The bank was to hold and receive the property "as trustee and shall from time to time as it, in its sole discretion shall determine advisable, sell or otherwise

dispose of said engines, propellors and instruments" and disburse the receipts therefrom to first satisfying the costs and expenses in connection with the trust, then paying the obligation owing to the bank by the guarantors and any surplus to be paid to the guarantors in the proportion that their respective obligations bear to the entire indebtedness. The agreement further provided:

"The obligation of The Trustee shall be limited to holding title to said engines, propellors and instruments and selling, or otherwise disposing of them from time to time as it, in its sole judgment and discretion, shall deem proper.

\*    \*    \*    \*    \*    \*

"The discretion and judgment of The Trustee shall be absolute and it shall be liable as Trustee only for acts and omissions and actual fraud of the rights of Guarantors hereunder."

This agreement was signed by appellant John G. Bulla, hereinafter designated plaintiff, and approximately fifty other guarantors.

Subsequent to the execution of this agreement, Arizona Airways gave the bank a bill of sale which recited that the conveyance was in trust to be held, dealt with and controlled by the bank as trustee in accordance with the terms of the trust

agreement. The bill of sale also provided that the conveyance was subject only to an existing lien in favor of the bank for the total sum due from Arizona Airways.

From time to time about six engines were individually sold and on or about February 3, 1951, the remainder of the property was sold for the sum of $95,000; and after making deductions of $6,572.26 because it was claimed the engines were not in good condition, the net realization was $88,427.-74. The plaintiff being dissatisfied with the sale filed a complaint against the bank and the purchaser alleging that he had guaranteed 21.15 percent of the debt represented by the note; that it was agreed the bank should hold the property as trustee; and that it should from time to time as it in its sole discretion might determine advisable sell or otherwise dispose of the property. It was further alleged that subsequent to the execution of the agreement the bank promised plaintiff that before it made a sale of any property, it would notify him of the price at which it proposed to make the sale; that the sale was made without giving such notice; and that the fair value of the property at the time of sale far exceeded $95,000 and the bank knew or by the exercise of reasonable diligence could have ascertained this fact. Prayer was in the alternative for injunction preventing the consummation of the sale or judgment against the bank for 21.15 percent of the difference between the fair value and sale price. The injunction feature of the case was abandoned and the purchaser eliminated from the case. The bank answered and counterclaimed against plaintiff for his proportionate share of the deficiency after crediting the receipts of the sale on the debt.

The case was tried with a jury and, pursuant to agreement that the action was of an equitable nature, interrogatories were submitted to the jury which by its verdict answered the same generally in favor of the plaintiff. The trial court made independent findings of fact and conclusions of law contrary to the jury's findings and rendered judgment dismissing plaintiff's complaint and in favor of defendant bank on its counterclaim for 21.15 percent of the deficiency. Plaintiff appeals, submitting a brief consisting of 137 pages, 21 of which consist of assignments of error and propositions of law. There is much duplication in these voluminous assignments and propositions. We are, therefore, not attempting to answer all the assignments but to the best of our ability dispose of the matter upon what we determine to be the controlling facts and questions presented.

■ It is first contended that properly construed the bill of sale was a mortgage or pledge for the reason the agreement preserved the bank's original lien on the prop-

erty and that under the provisions of sections 62–527 and 62–530, A.C.A.1939 [A.R.S. §§ 33–757, 33–791] sale of the property could not be legally effected without giving the mortgagor or pledgor notice as required by these sections. We do not think this position well taken. The owner, Arizona Airways, transferred to the bank complete legal title to the property in trust for the purposes stated in the trust agreement. True, the bank was one of the beneficiaries of the trust to the extent of the money it had loaned to Arizona Airways. We are unaware of any law that prohibits a grantee in trust from being trustee and also one of the beneficiaries under the trust  It is said that the instruments did not expressly authorize the trustee to sell without notice and consequently the statutory notice must be given. The provisions of the agreement show clearly the intent that sale might be made without notice. It provides that the trustee was to receive and hold the property and from time to time sell or otherwise dispose of the same as it may determine advantageous in its sole discretion; that this discretion and judgment of the trustee shall be absolute; and that no guarantor was to have any control or right to control this discretion. It would be impossible for the bank to carry out the trust if under these provisions it was required that statutory notice be given to some fifty guarantors

before a sale could be made. We are of the view that the rights of the parties must be tested by the law applicable to trusts and the obligations of the trustee under this agreement.

■■  Generally, the powers and duties of a trustee are measured by the terms of the instrument creating the trust and in the performance of these duties, he must in good faith protect the interests of all the beneficiaries and exercise the care and diligence which an ordinary prudent person under the circumstances would exercise in the management of his own affairs. In re Estate of Schuster, 35 Ariz. 457, 281 P. 38. If the trustee acts in good faith, violates none of the terms of the trust and in disposing of property realizes the fair market value, he is not liable to the beneficiary.

In relating facts herein we state those that there is evidence to support even though there might be evidence to the contrary, for the reason that plaintiff's major complaint is that the evidence does not support certain essential findings of the court nor the judgment. It appears that considerable effort had been made to sell the property through advertising and contacting brokers and airlines here and in Mexico. The trustee through its trust officer consulted with the plaintiff and other interested guarantors in an apparent effort to cooperate and secure the best deal. There was some difference of opinion

among them and plaintiff was unhappy about the situation. At one time at his request he was given a thirty-day option in the name of a Mr. Bentley which expired without a sale. Finally the trust officer arranged a meeting for December 15, 1950, with certain interested guarantors. The tenor of the meeting was that it was imperative that the motors be sold. Subsequently, two individuals each offered to purchase two motors but plaintiff objected because of a possibility of a deal with a prospective purchaser for all of them. The matter drifted without sale prospects until the last of January, 1951, when an offer was received from Los Angeles to purchase them all. This was the first offer ever received to purchase all the engines. Mr. Pulis, vice-president of the bank in charge of the trust department, after consultation with other officers of the bank went to Los Angeles and after a full day's negotiation worked out the deal heretofore related for $95,000. Plaintiff was never notified of this offer nor of the sale until after its consummation.

After a binding deal had been made for the sale of the property, plaintiff Bulla notified the bank that he had a purchaser for the property. A meeting was had concerning this at which Bulla offered the bank $100,000 with a certified check for $10,000. Upon asking if the $100,000 purchase price was available, the bank was told it was not but they might be able to raise it. No contract was offered the bank. It was developed that the contract for the purchaser whom plaintiff represented was between the prospective purchaser and Bulla for $149,800.

Plaintiff urges that the undisputed evidence establishes that the trustee had promised him it would make no sale without first notifying him and that because of that promise it waived the right to do so without first notifying him or is estopped to sell without such notice. The evidence is fairly susceptible of the interpretation that the trust officer did tell Bulla insofar as possible he would keep him advised as to offers made but it is doubtful that the trustee would have the power to waive in favor of one of many beneficiaries its powers and duties under the trust agreement. It was given the power of absolute discretion in disposing of the property. That power must be exercised in good faith for the benefit of all beneficiaries. It was clear that it would be advantageous to sell the entire lot in one transaction and much difficulty had been experienced in procuring offers. This was the first legitimate offer received and the trustee in the exercise of discretion given it cannot be condemned for moving to close the deal at a fair market price without the delays incident to notifying and negotiating with plaintiff. If encumbered with the neces-

sity of first dealing with one of the beneficiaries, an advantageous sale might well be lost to the detriment of the other beneficiaries. Irrespective of whether such a waiver could be legally accomplished under the circumstances herein, we are of the view that the trial court was fully justified in inferring that there was no intention on the part of the bank as trustee to waive its right and obligation to use its best judgment in closing a deal with or without notice to the plaintiff and it was not estopped to negotiate as it did and consummate the sale.

■ Plaintiff's law suit is bottomed upon his charge that the property was sold for a sum far less than its fair cash value. The court found that in making the sale and realizing $88,427.74, the bank obtained a price that was fair and reasonable under the market conditions then prevailing; that the bank believed it was making an advantageous sale, and that it was realizing the largest amount obtainable; and that it acted in good faith. These findings are attacked as not supported by the evidence but we fail to see the validity of such a challenge. These engines were originally purchased for $600 each. Witness Herbert Steward, engaged in the business of buying, selling and repairing aircraft engines, fully qualified as an expert and testified that he knew of the engines involved and that he could buy the same kind of engines in good condition in 100 lots at from $750 to $800 each. The court was justified in finding that the price realized was fair and reasonable under the market conditions and that the bank believed it was securing the largest obtainable amount. This together with the other circumstances fully justified a finding that the bank acted in good faith.

■ It appeared at the close of defendant's case that plaintiff had offered the bank $100,000 while he had a signed contract to sell the engines to his prospective purchaser for $149,800. In rebuttal plaintiff offered and after objection was denied the opportunity to explain this situation. The explanation according to his avowal was that he intended to distribute the difference to the respective guarantors pro rata in accordance with the percentages provided in the trust agreement. Plaintiff claims error in not permitting this explanation. We are unable to see how this evidence would have helped plaintiff's cause even if it had been admitted. It might have tended to dispel a possible inference that he intended to personally profit by the transaction but it would have proved that he attempted to mislead the trustee and by subterfuge defeat the terms of the trust agreement and unilaterally convert himself into a trustee of over $49,000 of the trust funds. There was no harmful error in excluding this testimony.

92

Complaint is made that the bank after selling the property for $95,000 illegally allowed a deduction of $6,572.26 from the original sale price. Among the conditions under which the purchaser agreed to buy were that the engines were to be inspected by CAA and the purchase price reduced $879.63 for each engine rejected, and the purchaser was given the option to accept the rejected engines at $879.63 each less the amount estimated as necessary to repair and recondition the same. The CAA inspection was waived by the purchaser but upon examination by others there was evidence of considerable damage from rust and other defects. The foregoing deduction was the result of negotiations between the parties because of these damaged engines. There was nothing unlawful about this transaction.

Complaint is made to the effect that the trustee in handling the trust did not exercise due diligence. The finding of the court that the trustee obtained a fair and reasonable price under the market conditions and also believed it was realizing the largest amount obtainable not only demonstrates good faith but refutes any idea of negligent conduct.

Judgment affirmed.

UDALL, C. J., and PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.