3 P.3d 1071

**Kay JEFFRIES and K. Alexander Hobson, Plaintiffs–Appellees,**

v.

**M. Jean HASSELL, in his official capacity as Commissioner of the Arizona State Land Department; The Arizona State Land Department; and the State of Arizona, Defendants–Appellants,**

**Page Cattle Company; F–Bar Cattle Company; Walter B. and Ruth Drye Living Trust; and Phillip Elliot, Defendants/Intervenors–Appellants.**

Nos. 1 CA–CV 98–0173, 1 CA–CV 98–0495.

Court of Appeals of Arizona, Division 1, Department E.

Dec. 7, 1999.

Review Denied April 18, 2000.

Janet Napolitano, Arizona Attorney General by Theresa M. Craig, Assistant Attorney General, Mary Mangotich Grier, Assistant Attorney General, Phoenix, for Defendants–Appellants.

Arizona Center for Law in the Public Interest by Jennifer B. Anderson, Timothy M. Hogan, and David S. Baron, Phoenix, for Plaintiffs–Appellees.

Brown & Brown P.C. by David A. Brown and Michael J. Brown, Pinetop, for Defendants/Intervenors–Appellants.

## OPINION

WEISBERG, Judge.

¶ 1 Appellees are Arizona taxpayers with children in Arizona public schools. Their complaint alleged that practices of the State Defendants (the "Department") regarding grazing leases on state trust lands violated the Enabling Act, the Arizona Constitution, and the State's duties to maximize revenue for the trust beneficiaries, the public schools of Arizona. Appellees requested declaratory and injunctive relief.

¶ 2 The trial court ultimately granted summary judgment to appellees; it found and declared as follows:

**153**

THE COURT FINDS AND DE-
CLARES that the State Defendants' [sic]
have breached their duties as trustee of
state trust lands in connection with the
administration of grazing leases by enter-
ing into grazing leases for a term of ten
years or less without advertising the avail-
ability of those grazing leases, by failing to
receive sealed bids, by applying the pre-
ferred right to renew in a manner that
stifles competition and by failing to obtain
any return on subleases executed by graz-
ing lessees on state trust lands, all as more
fully set forth in the Court's minute entry
of July 24, 1997 which is incorporated by
this reference.

THE COURT FURTHER FINDS that
the result of the foregoing breaches of the
State Defendants' duties as trustee is a *de
facto* system of long-term leases whereby
the State Defendants routinely renew
short-term leases without the opportunity
for meaningful competition such that graz-
ing leases are effectively executed for a
term of more than ten years and are there-
fore subject to the requirements of the
Enabling Act and the Arizona Constitution
applicable to the advertising and public
auction of such leases.

¶ 3 The trial court implemented its judg-
ment with the following orders:

IT IS FURTHER ORDERED that ef-
fective September 1, 1998 the State Defen-
dants shall not execute any grazing leases
without first complying with the provisions
of the Enabling Act and the Arizona Con-
stitution applicable to leases for a term
greater than ten years.

IT IS FURTHER ORDERED that ef-
fective September 1, 1998 the State Defen-
dants shall not approve any grazing sub-
leases unless the State Defendants have
acquired or exercised authority to impose
reasonable surcharges or otherwise obtain
a reasonable return on such subleases.

¶ 4 The Department appealed from both
this judgment and a later one awarding at-
torneys' fees to appellees. The trial court's
implementing orders were stayed pending
appeal. We have jurisdiction pursuant to
Arizona Revised Statutes Annotated
("A.R.S.") section 12–2101(B) (1994). Be-

cause we find that genuine issues of material
fact exist, and that appellees were not enti-
tled to judgment as a matter of law, we
reverse both judgments and remand for fur-
ther proceedings.

**I.**

¶ 5 In 1910, Congress passed the Arizona–
New Mexico Enabling Act, which authorized
the people of the two territories to form state
governments. Act of June 20, 1910, Pub.L.
No. 219, ch. 310, 36 Stat. 557. Pursuant to
the Act, the federal government granted al-
most 10 million acres to Arizona, with certain
conditions. "The land could be used *only* for
the support of the common schools of the
state (school trust lands) and for internal
improvements to the state." *Kadish v. Ari-
zona State Land Dep't*, 155 Ariz. 484, 486,
747 P.2d 1183, 1185 (1987), aff'd. sub nom.,
*ASARCO v. Kadish*, 490 U.S. 605, 109 S.Ct.
2037, 104 L.Ed.2d 696 (1989) (emphasis in
original).

¶ 6 The clear intent of the Act is "to
produce a fund, accumulated by sale and use
of the trust lands, with which the State could
support the public institutions designated by
the Act." *Lassen v. Arizona ex rel. Ariz.
Highway Dep't*, 385 U.S. 458, 463, 87 S.Ct.
584, 17 L.Ed.2d 515 (1967). The Act and the
restrictions it imposes "indicate Congress'
concern both that the grants provide the
most substantial support possible to the ben-
eficiaries and that only those beneficiaries
profit from the trust." *Id.* at 467, 87 S.Ct.
584.

[T]he general intent of Congress is clear.
It intended the Enabling Act to severely
circumscribe the power of state govern-
ment to deal with the assets of the com-
mon school trust. The duties imposed
upon the state were the duties of a trustee
and not simply the duties of a good busi-
ness manager.... Thus, to comply with
congressional intent, we must strictly ap-
ply the Enabling Act's restrictions regard-
ing disposal of school trust assets.

*Kadish*, 155 Ariz. at 487–88, 747 P.2d at
1186–87.

¶ 7 Arizona adopted the Enabling Act by
ratifying article 10 of the Arizona Constitu-

**154**

tion. The Arizona Land Department manages the state trust lands and classifies their suitable uses. *See* A.R.S. § 37–212 (Supp. 1998). Of Arizona's 9.6 million acres of trust lands, 8.4 million acres are classified as suitable for grazing. In 1996, there were about 1,330 grazing leases on state trust lands.

■ ¶ 8 Any lease of trust lands must serve the "best interest of the trust." A.R.S. § 37–313(A). But the " 'best interest standard' does not require blind adherence to the goal of maximizing revenue at the cost of contracting with an irresponsible lessee or hindering important alternative uses." *Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prods., Inc.,* 167 Ariz. 383, 392, 807 P.2d 1119, 1128 (App.1990); *see also Campana v. Arizona State Land Dep't,* 176 Ariz. 288, 291, 860 P.2d 1341, 1344 (App.1993) ("[I]mmediate revenue is not the sole consideration in determining the best interests of the trust."). Instead, the "Legislature chose a broader, 'best interest' standard that permits other considerations, such as the public benefits flowing from employing state land in uses of higher value than would the applicant for a lease." *See Havasu Heights,* 167 Ariz. at 392, 807 P.2d at 1128.

## II.

■ ¶ 9 In reviewing a grant of summary judgment, this court considers the facts most favorably to the non-moving party. *See Nestle Ice Cream Co. v. Fuller,* 186 Ariz. 521, 523, 924 P.2d 1040, 1042 (App.1996). Further, "[w]hen competing reasonable inferences may be drawn from the undisputed facts, summary judgment should not be granted." *Republic Ins. Co. v. Feidler,* 178 Ariz. 528, 534, 875 P.2d 187, 193 (App.1993). But the trial court did not apply that test in this case. Instead, it stated that it had "resolved all doubts in favor of protecting and preserving trust purpose," citing *Kadish,* 155 Ariz. at 495, 747 P.2d at 1194. In *Kadish,* however, the supreme court was merely stat-

ing a principle of statutory interpretation. It was not adopting a unique summary judgment standard for trust land cases. We therefore apply the traditional standard of review for summary judgment.

¶ 10 To begin our analysis, we note that all parties here agree that the Department must manage trust lands "in the best interests of the trust." *See* A.R.S. §§ 37–132(A)(5), 37–212(C), and 37–314(A) (Supp.1998); *see also Williams v. Greene,* 95 Ariz. 378, 381, 390 P.2d 907, 909 (1964) (controlling factor in leasing state land is the best interest of the state and its people). And all parties further agree that maximizing short-term lease income is not the Department's only concern when deciding how to serve those best interests. *See Manning v. Perry,* 48 Ariz. 425, 432–33, 62 P.2d 693, 695–96 (1936) (discussing other relevant factors).[1]

■ ¶ 11 The Department asserted below that, in renewing leases, it considers factors such as ownership of contiguous lands; a parcel's leasing history; and a lessee's ranching experience, investment in the land, and range stewardship. It also asserted that its renewal practices benefit the trust by stabilizing the trust's revenue stream, safeguarding the land by favoring continuity of management, and protecting the lessees' investments in water, fencing, and other improvements needed to render the land productive.

¶ 12 Appellees responded that other bidders—who would pay higher rent—were being denied an opportunity to do so. Appellees also posited that advertising, sealed bid and auctions of leases would generate competition, which would result in more income to the trust, and that the Department wrongfully failed to surcharge sublessees.

¶ 13 The Department countered that competition was limited not by lack of advertising, but by the prevailing checkerboard own-

1. In *Williams,* our supreme court noted that, while "[s]tarting with the premise that in leasing State land the benefits to be received by the State and its people are of primary importance, there are many factors to be considered in addition to the rental value." 95 Ariz. at 383–84, 390 P.2d at 911. Thus, factors such as the use

and development of surrounding lands, the tensions between urban and rural applications in the vicinity, and environmental considerations may be significant variables in assessing what would be in the actual "best interests" of the trust.

ership patterns[2] and the land's remoteness, limited water, fencing or improvements. The Department further contended that widespread advertising would cause a net loss because its experience showed that competing bidders, when they exist, rarely offer to pay higher rent. In addition, the Department pointed out that a lessee's willingness to pay higher rent did not necessarily make him the best lessee when all of the trust's "best interests" were weighed, and that sublease rates were influenced by other benefits provided by the sublessor, such as feed, surveillance or improvements.

¶ 14 Via their point counter-point, each party has raised thoughtful arguments. But because these arguments encompass material factual disputes appellees are not entitled to summary judgment.

### III.

¶ 15 In response to the trial court's judgment, the legislature passed H.B. 2509, which amended the statutes governing trust lands. The State argues that the amended statutes moot this case and provide adequate remedy for appellees. But this argument should first be presented to the trial court, which will be able to review all relevant issues through the prism of the new statute.

### IV.

¶ 16 The trial court awarded attorneys' fees to appellees pursuant to the private attorney general doctrine, which was adopted in *Arnold v. Arizona Dep't of Health Services*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). "The private attorney general doctrine is an equitable rule which permits courts in their discretion to award attorney's fees to a party who has vindicated a right that: (1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance." *Id.* Because we have reversed the trial court's grant of summary judgment, and have remanded the case for

further proceedings, we vacate its award of attorneys' fees.

### V.

¶ 17 The judgments are reversed and remanded. Appellees' request for an award of attorneys' fees on appeal is denied with leave to later seek those fees from the trial court, if appellees ultimately prevail on the merits.

CONCURRING: NOEL FIDEL, Presiding Judge, and E.G. NOYES, JR., Judge.

---

**2.** "Checkerboard" refers to a mixed pattern of land ownership that may include privately owned land, forest allotment lands, and land leased from the state, all used together for a common purpose but in which the leased par-

cels, for example, are contiguous only where their corners meet. *See Arizona State Land Dep't v. State ex rel. Herman*, 113 Ariz. 125, 127, 129, 547 P.2d 479, 481, 483 (1976).