212 P.3d 930

**Jesse BATTY, individually, Plaintiff–Appellant,**

v.

**GLENDALE UNION HIGH SCHOOL DISTRICT NO. 205, Defendant–Appellee.**

**No. 1 CA–CV 08–0274.**

Court of Appeals of Arizona, Division 1, Department A.

June 2, 2009.

Miranda, Ramirez & Associates, PC by Robert P. Ramirez, Phoenix, Attorneys for Appellant.

Holm Wright Hyde & Hays, PLC by Matthew W. Wright, Thomas J. Collins, David K. Pauole, Phoenix, Attorneys for Appellee.

## OPINION

WEISBERG, Presiding Judge.

¶ 1 Jesse Batty appeals the superior court's grant of summary judgment in favor of Glendale Union High School District No. 205 (the "District"). Batty argues the superior court erred by granting the District's motion on the basis that Batty failed to serve his notice of claim on the person or persons authorized to accept service for the District. We adhere to *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 144 P.3d 1254 (2006), and hold that, in this case, delivery of a notice of claim to the school superintendent is insufficient to complete service of process on the District. We therefore affirm.

## BACKGROUND

¶ 2 The District is a political subdivision of the State of Arizona and is governed by a five-member board. Arizona Revised Statutes ("A.R.S.") section 15–101(21) (2009). The general powers and duties of the governing board are prescribed by statutes and include, among others, the power to "sue and be sued" and the duty to "enforce policies and procedures for the governance of the schools." A.R.S. §§ 15–326(1) & 15–341(A)(1) (2009). "A governing board may delegate in writing to a superintendent, principal or head teacher the authority to prescribe procedures that are consistent with the governing board's policies." A.R.S. § 15–341(F) (2009).

¶ 3 In 1970, the District adopted rules and regulations, which, among others, delegated certain authority to the superintendent as follows:

> The Board hereby authorizes the Superintendent (head administrative employee) to enforce the provisions of this resolution. Said Superintendent or head administrator

shall, for the purposes of Title 15, Chapter 3, Arizona Revised Statutes, be the chief administrative officer of the school district.... The chief administrative officer or his delegates may take such actions as are necessary to maintain order on school property, or to protect the person of the students, staff, faculty, and employees and the general public on the property of the school district.

According to the District's Policy Manual, the superintendent acts "[u]nder the supervision of the Governing Board [and] is responsible for the administration and supervision of all activities of the district schools."

¶ 4 On August 8, 2006, after allegedly suffering injuries as a result of an accident that occurred on the grounds of the District's Independence High School, Batty delivered a notice of claim to the District's superintendent and the principal of Independence High School in an effort to comply with A.R.S. § 12–821.01(A) (2003) and Arizona Rule of Civil Procedure ("Rule") 4.1(i). The superintendent and the principal were not members of the governing board.

¶ 5 The District subsequently filed a motion for summary judgment arguing that Batty failed to serve a notice of claim on the District. Relying on *Falcon*, the District argued that its chief executive officer ("CEO") or the person or persons authorized to accept service pursuant to Rule 4.1(i) is its entire governing board and not its superintendent or school principal. The superior court agreed and granted summary judgment in the District's favor. Batty timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## STANDARD OF REVIEW

¶ 6 We review the superior court's grant of summary judgment de novo. *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, ¶ 7, 953 P.2d 168, 170 (1998). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). Where, as here, the material facts are undisputed, our task is to determine whether the superior court correctly applied the substantive law. *Miller v.*

*Westcor Ltd. P'ship*, 171 Ariz. 387, 390, 831 P.2d 386, 389 (App.1991). We review the superior court's interpretation of the applicable law de novo. *See Pima County v. Pima County Law Enforcement Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 13, 119 P.3d 1027, 1030 (2005).

## DISCUSSION

¶ 7 Pursuant to A.R.S. § 12–821.01(A),

Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues.

Rule 4.1(i) provides,

Service upon a county or a municipal corporation or other governmental subdivision of the state subject to suit, and from which a waiver has not been obtained and filed, shall be effected by delivering a copy of the summons and of the pleading to the chief executive officer, the secretary, clerk, or recording officer thereof.

¶ 8 Batty does not dispute that he must comply with the provisions of A.R.S. § 12–821.01(A) and Rule 4.1(i). Rather, he argues that *Falcon* does not control this case, and even if it does, the superintendent is the District's CEO for purposes of Rule 4.1(i). We disagree.

¶ 9 In *Falcon*, our supreme court considered whether service of a notice of claim on one member of a multi-member county board of supervisors complied with the requirements of A.R.S. § 12–821.01(A) and Rule 4.1(i). 213 Ariz. at 526, ¶ 2, 144 P.3d at 1255. After noting that some public entities, such as counties and school boards, did not have a statutorily designated CEO, the court interpreted the term "executive officer" in Rule 4.1(i) as "the individual or entity that controls, supervises, and has the ultimate responsibility for ensuring the proper function of a governmental entity." *Id.* at 527, ¶ 14, 144 P.3d at 1256. The court then reviewed the statutory powers and duties of a county

board of supervisors and stated, "Most importantly for purposes of this case, the board has the power to '[d]irect and control the prosecution and defense of all actions to which the county is a party, and compromise them.'" *Id.* at ¶ 15. The court then held that the board of supervisors was the county's CEO for purposes of Rule 4.1(i) and that "delivery of a notice of claim to one member of the board does not comply with either the statute or the rule." *Id.* at 531, ¶ 34, 144 P.3d at 1260.

¶ 10 In reaching its holding, the *Falcon* court expressly rejected the argument that the county manager was the county's CEO. *Id.* at 528, ¶ 17, 144 P.3d at 1257. The court found that (1) the county board of supervisors appointed the county manager, (2) the county manager served under the direction and control of the board, (3) the county manager's duties were, among others, to coordinate and control all administrative branches of the county, and (4) the board did not delegate its statutory or implied powers to the county manager. *Id.* Thus, the court concluded that the county board of supervisors remained "ultimately responsible for ensuring the proper operation of county government" and that the county manager was not the county's CEO for purposes of Rule 4.1(i). *Id.* The court further reasoned that because county managers are not statutory officers and because not all counties have county managers, treating a county manager as the county's CEO would create confusion for future claimants. *Id.*

¶ 11 We find *Falcon* controlling in this case. Like the county board of supervisors in *Falcon,* the District's governing board is a political subdivision with statutorily vested powers and may sue and be sued with respect to those powers. Both boards have the discretion to hire a head administrative employee, such as the county manager and school superintendent. The county manager and school superintendent both serve under the supervision of their respec-

tive boards. Like the county manager, whose duties included coordinating and controlling the administrative branches of the county, the superintendent's duties included the administration and supervision of all District schools. Moreover, just as the *Falcon* court was influenced by the absence of county managers in some counties, as the District's attorney aptly pointed out at oral argument, not every school district has a superintendent.[1] Because the organization of the District and the extent of the superintendent's job description are comparable to those of the county and the county manager in *Falcon,* we cannot ignore that similarity. Consequently, we reject Batty's contention that this portion of *Falcon* must be read as dicta and conclude that the analysis in *Falcon* must control here.

¶ 12 We additionally reject Batty's argument that *Falcon* must be applied prospectively because he filed the notice of claim more than two months before *Falcon* was decided and because a retroactive application in this case would produce inequitable results. The general rule in Arizona is that in civil cases, a court opinion operates both retroactively and prospectively, unless otherwise stated. *Chevron Chem. Co. v. Superior Court,* 131 Ariz. 431, 435–36, 641 P.2d 1275, 1279–80 (1982). The court in *Falcon* did not limit its opinion to only a prospective application. Indeed, as the District points out, the *Falcon* court applied its holding retroactively to bar plaintiffs' claim against the county. 213 Ariz. at 531, ¶ 35, 144 P.3d at 1260. Therefore, because the analysis applied by the *Falcon* court to counties applies equally to school districts, we must also be guided by our supreme court's decision to apply *Falcon* retroactively.

¶ 13 Nonetheless, Batty argues that unlike in *Falcon,* the District's governing board specifically delegated its authority to the superintendent, and thus, even under the

1. For example, Hackberry Elementary School District No. 3 is governed by a three-member board without a superintendent. *See* Hackberry Elementary School District No. 3 Homepage, *http://www.cedarhillsschool.org/* (follow "Governing School Board" or "Administrator" hyperlink)

(last visited April 10, 2009); also Ariz. Dep't of Educ. Homepage, *http://www.ade.state.az.us/* (follow "Find a School" hyperlink, then "Public School Search" hyperlink, and search by name "Hackberry") (last visited April 10, 2009).

*Falcon* analysis, the superintendent is the District's CEO. We disagree.

■■ ¶ 14 "School boards have only the authority granted by statute, and such authority must be exercised in a manner permitted by statute." *Campbell v. Harris,* 131 Ariz. 109, 112, 638 P.2d 1355, 1358 (App. 1981); *see also Facilitec, Inc. v. Hibbs,* 206 Ariz. 486, 488, ¶ 10, 80 P.3d 765, 767 (2003) (stating agencies may only act pursuant to powers conferred by statutes and may not delegate such authority absent statutory authority). School boards may, pursuant to A.R.S. § 15-341(F), delegate to a superintendent "the authority to prescribe procedures that are consistent with the governing board's policies."

¶ 15 Although A.R.S. § 15-341(F) and *Falcon* both arguably allow the possibility that a school governing board could delegate its authority to accept effective service of process to a CEO, the terms "chief executive officer" has nevertheless been interpreted by our supreme court to mean the person or persons who has or have among other duties, "the ultimate responsibility for ensuring the proper function of a governmental entity." *Id.* at 527-28, ¶¶ 14, 17, 144 P.3d at 1256-57. Because a governing body cannot give away its ultimate authority, the delegation contemplated by *Falcon,* and permitted in this case by A.R.S. § 15-341(F), must be of powers less than those reserved only to the governing body. *See, e.g., Loving v. United States,* 517 U.S. 748, 758-59, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) (recognizing that Congress may delegate its authority, but that it may not delegate its constitutional power to make law); *3613 Ltd. v. Dep't of Liquor Licenses & Control,* 194 Ariz. 178, 183, ¶ 21, 978 P.2d 1282, 1287 (App.1999) ("The legislature may not delegate its power to make laws."); *see also In re Santa Cruz,* 8 Ariz.App. 349, 351, 446 P.2d 253, 255 (1968) (recognizing doctrine

that "a delegated power cannot be delegated" and holding juvenile court must personally exercise power conferred to it by statute); *Salerno v. Espinoza,* 210 Ariz. 586, 588-89, ¶ 10, 115 P.3d 626, 628-29 (App.2005) (holding legislature's delegation to county supervisors of "ministerial regulation" over judicial employees did not alter the "ultimate authority" of the judicial department over those employees). Although it is unclear just what de legation is necessary for a person or persons to be deemed a CEO under the *Falcon* standard, we need not decide whether the delegation in this case sufficiently qualified the superintendent as a CEO under that standard because (1) the District's governing board did not designate the superintendent as CEO and (2) given the similarities between the position of the county manager in *Falcon* and the position of the superintendent in this case, *see supra* ¶ 11, we must conclude that like the county manager in *Falcon,* the superintendent is not a CEO under the *Falcon* standard.[2]

## CONCLUSION

¶ 16 We hold that the delivery of a notice of claim to the school superintendent here is insufficient to complete service of process on the District. Consequently, we affirm the judgment of the superior court.

CONCURRING: JOHN C. GEMMILL and DANIEL A. BARKER, Judges.

---

2. At oral argument, Batty pointed to several school districts that have designated their superintendent as CEO and argued that even though the school board here designated its superintendent as "chief administrative officer," it likely intended to use that term interchangeably with "chief executive officer." The District responded that the title of "chief administrative officer" or "chief executive officer" does not end the issue,

but rather we must examine the duties and power of the superintendent in this case and apply the standard set forth in *Falcon.* Although it is unclear whether under *Falcon,* a claimant could initiate action against a school district by delivering a notice of claim to a superintendent who has been properly designated as that district's CEO, we need not reach that issue given our holding here.