232 P.3d 747

Maria BAIER, in her capacity as Arizona State Land Commissioner; and the Arizona State Land Department, Petitioners/Plaintiffs/Appellees,

Maricopa County Flood Control District, a political subdivision of the State of Arizona, Defendant/Appellee,

Eric Holder, Jr., in his official capacity as Attorney General of the United States of America, Respondent/Interested Party/Appellee,

v.

MAYER UNIFIED SCHOOL DISTRICT; Gadsden Elementary School District, Defendants/Appellants.

No. 1 CA–CV 09–0116.

Court of Appeals of Arizona, Division 1, Department B.

May 18, 2010.

As Amended May 24, 2010.

Terry Goddard, Attorney General By William A. Richards, and Kenneth D. Nyman, Phoenix, Attorneys for Petitioners/Plaintiffs/Appellees.

Arizona Center for Law in the Public Interest By Timothy M. Hogan, and Joy E. Herr–Cardillo, Phoenix, Attorneys for Defendants/Appellants.

Julie M. Lemmon, Attorney at Law, Tempe, Attorney for Defendant/Appellee.

## OPINION

NORRIS, Judge.

¶ 1 Over objection by appellants Mayer Unified School District and Gadsden Elementary School District ("Districts"), the superior court approved a settlement agreement ("settlement") between the Arizona State Land Department ("ASLD"), acting through its Commissioner[1] and the Flood Control District of Maricopa County ("FCD"). Through the settlement, the ASLD and the FCD resolved their competing demands and claims concerning an easement over state trust land granted without compensation by the ASLD to the FCD in 1964 ("Original Easement") for the construction of flood retarding structures ("dams"). As part of the settlement, the FCD returned approximately 13,000 acres that had been subject to the Original Easement to the ASLD and retained the easement over approximately 6,000 acres ("Modified Easement") for the operation and maintenance of the dams.

¶ 2 As in the superior court, on appeal the Districts challenge the constitutionality and prudence of the settlement, asserting the Commissioner failed to obtain compensation for or dispose of the state trust land subject to the Original or Modified Easements in accordance with the specific constraints mandated by the Arizona–New Mexico Enabling Act[2] ("Enabling Act") and the Arizona Constitution. The Districts' objections to the constitutionality of the settlement, however, are barred by the Arizona Supreme Court's decision in *Mayer Unified School District v. Winkleman*, 219 Ariz. 562, 201 P.3d 523 (2009). And, although *Mayer* does not bar the Districts' objections to the prudence of the settlement, the record supports the superior court's rejection of that argument. We therefore affirm the judgment of the superior court approving the settlement.

## FACTS AND PROCEDURAL BACKGROUND

¶ 3 In 1910, through its passage of the Enabling Act, Congress authorized "the people of the territories of Arizona and New Mexico to form state governments." *Kadish v. Ariz. State Land Dep't* (*Asarco I*), 155 Ariz. 484, 486, 747 P.2d 1183, 1185 (1987), *aff'd ASARCO Inc. v. Kadish* (*Asarco II*), 490 U.S. 605, 625, 109 S.Ct. 2037, 2050, 104 L.Ed.2d 696 (1989). The Enabling Act granted almost 11 million acres of land to the State of Arizona in trust for the support of public schools and other designated purposes.[3] Enabling Act §§ 24, 25, 28; *Mayer*, 219 Ariz. at 564, ¶ 2, 201 P.3d at 525. Congress imposed several specific and restrictive conditions governing the disposition of state trust land. *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 589, 790 P.2d 242, 244 (1990). For example, state trust land must be "appraised at [its] true value" and cannot be sold for less than the appraised amount. Enabling Act § 28. And, the State is prohibited from selling or leasing state trust land "except to the highest and best bidder at a public auction." *Id.* Disposal of state trust land in a manner not substantially conform-

---

1. At the time of the settlement, the Commissioner was Mark Winkleman; at the time of this opinion, the Commissioner is Maria Baier. For ease of reference, we use the masculine pronoun "he" to refer to the Commissioner throughout this opinion and unless otherwise specified, we refer to Winkleman and Baier collectively as "Commissioner."

2. Act of June 20, 1910, Pub. L. No. 219 (ch. 310), 36 Stat. 557.

3. Arizona received 10,790,000 acres: 8,000,000 acres for the "common schools" and the remainder for various public institutions such as penitentiaries, miners' hospitals, and agricultural and mechanical colleges. *See* Enabling Act §§ 24, 25; *Lassen v. Arizona ex rel. Ariz. Highway Dep't* (*Lassen II*), 385 U.S. 458, 460 n. 2, 87 S.Ct. 584, 585 n. 2, 17 L.Ed.2d 515 (1967).

ing to the provisions of the Enabling Act constitutes a "breach of trust" and renders the disposition "null and void." *Id.*

¶ 4 Pursuant to statutory authorization, the ASLD, acting through its Commissioner, administers the trust. *See* Ariz.Rev. Stat. ("A.R.S.") §§ 37–102, –132 (Supp. 2009);[4] *Koepnick v. Ariz. State Land Dep't,* 221 Ariz. 370, 373, ¶ 2, 212 P.3d 62, 65 (App. 2009). The Commissioner serves as the trustee of state trust land and "is strictly obligated to manage [state] trust lands for the benefit of the trust and trust beneficiaries." *Berry v. Ariz. State Land Dep't,* 133 Ariz. 325, 327, 651 P.2d 853, 855 (1982); *Jeffries v. Hassell,* 197 Ariz. 151, 154, ¶ 10, 3 P.3d 1071, 1074 (App.1999). The Commissioner "has great discretion concerning the disposition of trust lands and has authority to devise detailed plans for the sale, lease and use of state land." *Koepnick,* 221 Ariz. at 377, ¶ 19, 212 P.3d at 69 (internal citation omitted).

¶ 5 Beginning in 1929, the Commissioner granted easements over state trust land to various government entities, for roads and other public purposes, without requiring compensation to the trust. *Mayer,* 219 Ariz. at 564, ¶ 3, 201 P.3d at 525. The Arizona Supreme Court endorsed this practice until 1967,[5] when the United States Supreme Court ruled the Enabling Act requires compensation to the trust for the full value of any easements or uses of state trust land. *Lassen II,* 385 U.S. at 469, 87 S.Ct. at 590. The Supreme Court, however, explicitly declined to decide whether the easement holders owed compensation for the more than 900 easements granted between 1929 and the date of its opinion in 1967. *Id.* at 469 n. 22, 87 S.Ct.

at 590 n. 22; *Mayer,* 219 Ariz. at 565–66, ¶ 13 & n. 4, 201 P.3d at 526–27 & n. 4.

¶ 6 In 1964, the Commissioner granted the Original Easement to the FCD for the construction and maintenance of three large dams.[6] The FCD, a municipal entity, had agreed to be the local sponsor for the Soil Conservation Service (now the Natural Resources Conservation Service, "NRCS"), the entity that would fund and construct the dams. As the local sponsor, the FCD was responsible for obtaining the necessary land and subsequently assuming the perpetual obligation to operate, maintain, and provide federal access to the dams.

¶ 7 The Original Easement encompassed approximately 18,500 acres, primarily in northern Pinal County. As was the practice before the Supreme Court's 1967 decision in *Lassen,* the Commissioner granted the Original Easement without compensation. In October 2001, after receiving an inquiry from a potential buyer for state trust land subject to the Original Easement, the Commissioner wrote to the FCD and asserted the Original Easement was invalid because it had been granted for "no financial consideration" in violation of the Enabling Act. The Commissioner presented the FCD with a list of "objectives" that included limiting the FCD's easement to the area actually affected by the FCD dams and payment to ASLD of compensation for the FCD's "past, present and future use" of state trust land.

¶ 8 The Commissioner's October 2001 letter unleashed years of escalating demands and claims and counter-demands between the Commissioner and the FCD; it also created a cloud of uncertainty as to whether the FCD could continue to access, maintain, and repair

---

4. Although certain statutes cited in this opinion were amended after the superior court approved the settlement, the revisions are immaterial. Thus, we cite to the current versions of these statutes.

5. *State ex rel. Ariz. Highway Dep't v. Lassen* (*Lassen I* ), 99 Ariz. 161, 167–68, 407 P.2d 747, 751–52 (1965) (duty of Commissioner is to grant, without compensation, material sites on and easements over state trust land for highways) (citing *State ex rel. Conway v. State Land Dep't,* 62 Ariz. 248, 156 P.2d 901 (1945); *Grossetta v. Choate,* 51 Ariz. 248, 75 P.2d 1031 (1938)).

6. The Commissioner granted the Original Easement for three specific purposes: (1) ingress and egress to make soil tests, topographic surveys, and area surveys; (2) ingress and egress to the Original Easement area, with the right to construct dams, reservoirs, levees, access roads, and other structures or improvements in connection with (1); and (3) the right to maintain, repair, alter, add to, and/or improve the structures and improvements.

the dams and otherwise fulfill its contractual obligations to the NRCS because of the parties' dispute over the Original Easement. In a letter dated May 26, 2004, the chairman of the FCD's board of directors, apparently exasperated by the protracted disagreement,[7] notified the Commissioner it would "not compensate [the trust] in any amount related to its use under color of title of the [Original Easement] from the date of grant of the easement through October 11, 2001 and thereafter," would "no longer exercise any rights specifically granted by the [Original Easement]," and, as of June 3, 2004, would transfer all of its responsibilities for the operation and maintenance of the dams to the ASLD in accordance with its agreements with the NRCS.[8] Recognizing the ASLD had neither the FCD's expertise nor adequate resources to operate and maintain the dams, the Commissioner persuaded the FCD to continue to operate and maintain the dams while he, the FCD, and other interested parties[9] engaged in extensive negotiations to resolve the threatened handoff and the funding of the operation and maintenance of the dams.

¶ 9 In October 2004, while the negotiations between the Commissioner and the FCD were ongoing, the Districts sued the State, the Commissioner, and the ASLD asserting the defendants had granted numerous governmental entities easements (the "09 Easements") without compensation in violation of the Enabling Act. *See Mayer*, 219 Ariz. at 564, ¶ 5, 201 P.3d at 525. Eventually, 28 holders of the 09 Easements, including the FCD, joined the case as defendants. *Id.* As we discuss in more detail below, in 2009, after the superior court in this case approved the settlement between the ASLD and the FCD, our supreme court affirmed dismissal of the Districts' case, holding their claims were time-barred. *Id.* at 564, ¶ 1, 201 P.3d at 525.

¶ 10 The competing demands of the FCD and the Commissioner coupled with the possible outcomes in the then pending *Mayer* litigation portended serious consequences to the ASLD. The Commissioner recognized if the court in *Mayer* declared the Original Easement void, as the Districts were requesting, and ordered the FCD to remove the dams,

> the delineation of the 100 year floodplain for the lands downstream from the [dams] would change, and lands downstream from the [dams], including State Trust Lands within the Protected Lands, would be subject to an increased risk of flooding, two circumstances that would pose incalculable costs and risks to a presently unidentified group of landowners, and others.

Although the Commissioner disputed whether the ASLD would be liable for these costs and risks, he also recognized the FCD would argue to the contrary and would contend the ASLD should bear the responsibility for removing the dams and be required to reimburse the FCD for the costs of constructing, operating, and maintaining the dams since their original construction and paying damages to third parties who had acted in reliance on the operation and existence of the dams.

¶ 11 The cumulative years of negotiation and litigation, the "considerable uncertainty about [the parties'] rights, duties, and liabilities with respect to the [dams] and the [Original Easement]," and the then unknown future for the *Mayer* litigation paved the way for the Commissioner and the FCD to settle their dispute. In September 2006, the Commissioner and the FCD entered into the settlement. Contingent on court approval, the parties agreed the FCD would relinquish to the ASLD its "right, title and interest" in approximately 13,000 acres covered by the Original Easement, but would retain an easement over the remaining 6,000 acres which it agreed to use for the operation and mainte-

---

7. The chairman explained: "we have concluded it is not in the best interest of the taxpayers of Maricopa County to allow the legal status of the Structures and perpetual easement to continue in question for an unknown period of time."

8. The chairman of the FCD simultaneously notified the NRCS it was transferring operational and maintenance responsibility to the ASLD.

9. The City of Apache Junction, the City of Mesa, and the U.S. Department of Agriculture became involved in the negotiations.

nance of the dams. The ASLD also agreed it would not require the FCD to pay any compensation to the ASLD for its use of the Original Easement or its future use of the Modified Easement.

¶ 12 On October 27, 2006, the Commissioner petitioned the superior court to approve the settlement with the FCD and to declare the Modified Easement "valid, [and] legally binding." In addition to naming the FCD as a defendant, the Commissioner joined the Districts as defendants because, he alleged, they had contended they could "force, through the Mayer [sic] Action, a resolution of the Petitioners' dispute with the Flood Control District that is inconsistent with the Settlement Agreement terms." The Commissioner also asked the court to declare the Districts lacked standing to challenge the settlement.

¶ 13 The Commissioner (joined by the FCD) and the Districts cross-moved for summary judgment. The superior court found there was "no dispute that the settlement was [ ] a good faith effort to resolve legitimate differences between the [ASLD] and the [FCD]," approved the settlement "as a valid exercise of the Commissioner's trustee powers," and declared the Modified Easement "binding between the [Commissioner and the FCD]." The Districts timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) and –2101(B) (2003).

## DISCUSSION

### I. Standing

¶ 14 As a threshold matter, the Commissioner contends the Districts lack standing to challenge the settlement. We disagree.

¶ 15 Whether a party has standing to sue is a question of law we review de novo. *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 15, 91 P.3d 1019, 1023 (App.2004). Because Arizona has no counterpart to the federal "case or controversy" requirement, "the question of stand-

ing in Arizona is not a constitutional mandate." *Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 141, ¶ 6, 108 P.3d 917, 919 (2005) (quoting *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985)). Instead, Arizona courts are governed primarily by "questions of prudential or judicial restraint." *Id.* Nonetheless, Arizona maintains a rigorous standing requirement whereby a "plaintiff must allege a distinct and palpable injury." *Id.* (quoting *Sears v. Hull*, 192 Ariz. 65, 69, ¶ 16, 961 P.2d 1013, 1017 (1998)).

¶ 16 Although the Enabling Act charges the United States Attorney General with the duty of enforcing the trust, it also expressly provides "[n]othing herein contained shall be taken as in limitation of the power of the State or of any citizen thereof to enforce the provisions of this Act." Enabling Act § 28. The United States Supreme Court and our supreme court have recognized that taxpayers may sue for violations of the Enabling Act. *See Asarco II*, 490 U.S. at 612–13, 617–18, 109 S.Ct. at 2043, 2046 (taxpayer-plaintiffs had standing to enforce Enabling Act in Arizona courts, even if their claim was not cognizable in federal courts); *Asarco I*, 155 Ariz. at 485, 747 P.2d at 1184 ("taxpayers who allege that their taxes support public education" and Arizona Education Association permitted to maintain a lawsuit alleging a lease of state trust land failed to comply with Enabling Act); *Jeffries*, 197 Ariz. at 152, ¶ 1, 3 P.3d at 1072 (court permitted, without comment, "Arizona taxpayers with children in public schools" to enforce Enabling Act). Moreover, as direct beneficiaries of the trust,[10] the Districts' interests are far more defined than the interests of the plaintiffs in *Jeffries* and *Asarco I*, whose standing went unchallenged. *Id.* Thus, we agree with the superior court the Districts have standing to challenge the settlement between the Commissioner and the FCD.

### II. Enabling Act

¶ 17 The Districts first argue the Commissioner was not authorized to enter into the

---

**10.** Section 24 of the Enabling Act specifically granted the state trust land for the "support of common schools." Today's public school districts are direct descendants of 19th century "common schools." *See Branson Sch. Dist. RE–82 v. Romer*, 161 F.3d 619, 629 (10th Cir.1998).

settlement with the FCD because he failed to obtain compensation from the FCD, as required by the Enabling Act. Specifically, they argue the Original Easement, granted without compensation, was null and void, and the settlement simply perpetuated the original Enabling Act violation because the Commissioner failed to obtain any compensation from the FCD.[11] Although there is force to the Districts' argument, we are not writing on a clean slate. We believe our supreme court's decision in *Mayer* bars the Districts' challenge to the settlement.[12]

¶ 18 In *Mayer*, the Districts sued, among others, the Commissioner and asserted various claims arising out of the Commissioner's failure to obtain compensation for the 09 Easements. 219 Ariz. at 564, ¶ 5, 201 P.3d at 525. Our supreme court held the Districts' claims were time-barred under the applicable one year statute of limitations. *Id.* at 567, ¶ 21, 201 P.3d at 528; *see* A.R.S. § 12–821 (2003). The court explained that although the Enabling Act violations had occurred when the 09 Easements were granted without compensation, the Districts' claims had accrued in 1967 when the United States Supreme Court issued its decision in *Lassen II. Mayer*, 219 Ariz. at 567, ¶ 18, 201 P.3d at 528. In so holding, the court rejected the Districts' argument their claims were not time-barred because the Commissioner, as trustee of the state land trust, had an ongoing duty to remedy violations of the Enabling Act, and the Commissioner's failure to obtain compensation constituted a continuing violation, creating a new claim "each moment that the Commissioner fails to obtain value for the easements." *Id.* at 567, ¶ 19, 201 P.3d at 528. The court held the Enabling Act violations "occurred once, when the 09 easements were granted, even though the cause of action did not accrue until 1967." *Id.* at 567, ¶ 20, 201 P.3d at 528.

¶ 19 In holding the Districts' claims were time-barred and rejecting their continuing violation theory, the *Mayer* court barred the Districts from attempting to force the Commissioner to remedy prior violations of the Enabling Act by obtaining compensation from the 09 Easements holders. In this case, the Districts are attempting to do just that by objecting to the settlement on the grounds the Commissioner has a continuing duty to remedy prior violations of the Enabling Act. Under the doctrine of collateral estoppel, or issue preclusion, the Districts are not entitled to relitigate that issue.

¶ 20 Issue preclusion binds a party to a decision on an issue of fact or law litigated in a prior lawsuit if that issue was actually litigated in the prior lawsuit, the party to be estopped had a full and fair opportunity and motive to litigate the issue, and a final judgment was entered in the prior lawsuit, provided such issue or fact was essential to the prior judgment. *E.g., Chaney Bldg. Co. v. City of Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); *Gilbert v. Bd. of Med. Exam'rs,* 155 Ariz. 169, 174–75, 745 P.2d 617, 622–23 (App.1987) (superseded by statute on other grounds). This rule of preclusion applies when the subsequent lawsuit is between the same "parties to the prior action, and who were adversaries [ ] with respect to the particular issue, whether the second action is brought by the plaintiff or by the defendant in the original action." Restatement (Second) of Judgments ("Restatement") § 27 cmt. a (1982). Thus, it is immaterial for purposes of issue preclusion that the Districts were the plaintiffs in *Mayer* and asking for affirmative relief, while here the Districts

---

11. The Districts argue in their opening brief: "Rather than obtain the required compensation and address the earlier, long-standing violation of the Enabling Act, the proposed Settlement Agreement ignores the original violation and lack of payment for years' [sic] of use and attempts to grant FCD a reduced permanent easement *without any compensation.*"

12. Although the supreme court issued its decision in *Mayer* after the superior court entered

judgment, we may consider whether the court's decision has issue preclusive effect on appeal, especially since issue preclusion presents a question of law we review de novo. *See Batty v. Glendale Union High Sch. Dist. No. 205,* 221 Ariz. 592, 595, ¶ 12, 212 P.3d 930, 933 (App. 2009) (general rule in Arizona is that in civil cases, court opinion operates both retroactively and prospectively, unless otherwise stated).

are the defendants and objecting to the relief requested by the Commissioner.

¶ 21 The Districts argue that because *Mayer* resolved the Districts' compensation claims on the basis of the statute of limitations instead of "on the merits" of the Enabling Act, the court's decision is not entitled to preclusive effect. We disagree. For purposes of issue preclusion, a court must determine what issue was actually litigated and decided in the prior lawsuit. As recognized by the Restatement, this question "involves a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute." Restatement § 27 cmt. c. In our view, the dispute litigated in *Mayer* is "essentially the same dispute" being litigated here. As discussed, in *Mayer*, the Districts rested their claims on the Commissioner's failure to obtain compensation for the 09 Easements; here, the Districts rested their objections to the settlement on the Commissioner's failure to obtain compensation for one of the 09 Easements. Because *Mayer* barred the Districts' claims against the Commissioner for this failure, the Districts cannot resurrect those same claims here, albeit as objections to the Commissioner's settlement with the FCD. The Districts have had their "day in court" on this issue and are not entitled to relitigate it.

### III. Article 10 of the Arizona Constitution

¶ 22 The Districts next argue the Commissioner was not authorized to enter into the settlement because he failed to comply with the public auction and appraisal requirements governing the disposition of state trust land imposed by Article 10 of the Arizona Constitution when he "conveyed" the Original and Modified Easements.

¶ 23 The framers of the Arizona Constitution independently incorporated the essential restrictions governing the disposition of state trust land in the Enabling Act in Article 10 of our state constitution. In *Deer Valley Unified School District v. Superior Court*, 157 Ariz. 537, 760 P.2d 537 (1988), the Arizona Supreme Court held the Enabling Act restrictions incorporated in Article 10 constituted separate and independent requirements for the disposition of state trust land. The court stated the Enabling Act, as construed in *Lassen II*, merely set out the minimum protection for state trust land, and greater protection existed under Article 10.[13]  *Id.* at 541, 760 P.2d at 541. Although the Commissioner is required to comply with the appraisal and public auction requirements of Article 10 in disposing of state trust land, the Districts cannot now attack the Commissioner's authority to enter into the settlement because he failed to do so here.

¶ 24 First, the appraisal and public auction requirements of Article 10 (and indeed of the Enabling Act) are "concerned with ... insuring [sic] that [state trust] lands and leaseholds [are] appraised at their true value, and that no sale or other disposal [is] made for a consideration less than the true value." *Princess Plaza Partners v. State*, 187 Ariz. 214, 220, 928 P.2d 638, 644 (App. 1995). By asserting the settlement disposed of state trust land in violation of Article 10, the Districts are essentially contending the Commissioner should have obtained compensation. But as we have discussed, the Commissioner's failure to obtain compensation for the 09 Easements was the dispute decided in *Mayer*. Although the Districts' Article 10 argument was not, as far as we can determine, raised in *Mayer* and in that sense is a new argument, the Districts cannot use this new argument to relitigate the dispute decided in *Mayer*. *See* Restatement § 27 cmt. c ("if the issue [decided in the prior case] was one of law, new arguments may not be presented to obtain a different determination of that issue"); *see also Barassi v. Matison*, 134 Ariz. 338, 341, 656 P.2d 627, 630 (App.1982)

---

**13.** Thus, the *Deer Valley* court held that although *Lassen II* stated condemnation was not prohibited under the Enabling Act, it was impermissible under Article 10. 157 Ariz. at 540–41, 760 P.2d at 540–41 (citing *Lassen II*, 385 U.S. at 464–65, 87 S.Ct. at 587–88).

(issue preclusion bars legal argument in subsequent case that could have been raised in prior case).

¶ 25 Second, the Districts' Article 10 argument, as it pertains to the Modified Easement, fails because the public auction requirement applies to state trust land "sold or leased" and the appraisal requirement applies to the "sale or other disposal" of state trust land. Ariz. Const. art. 10, §§ 3, 4. Under the settlement, the Commissioner did not sell, lease, or dispose of any state trust land that had not been disposed of long before. Indeed, the settlement required the FCD to relinquish 13,000 acres of state trust land to the ASLD.

*IV. Prudence of the Settlement*

¶ 26 The Districts argue the settlement was "imprudent" and should not have been approved by the superior court [14] because the Commissioner failed to appraise the state trust land subject to the Original or Modified Easements. The Districts also argue the settlement was imprudent because the Commissioner failed to quantify whether the value of the approximately 13,000 acres the FCD had agreed to return to the trust exceeded the value of the 6,000 acres the Commissioner had agreed it could retain; how much it would cost to litigate the dispute with the FCD in the absence of the settlement; and how much it would cost the ASLD to operate and maintain the dams if the FCD relinquished responsibility to the ASLD, as it had threatened to do before the settlement. Although the Commissioner neither appraised the state trust land subject to the Original or Modified Easements nor quantified the values or costs identified by the Districts, his failure to do so did not render this settlement imprudent.[15]

¶ 27 The ASLD, through the Commissioner, is subject to the same fiduciary duties applicable to a private trustee—it must manage state trust land for the benefit of the trust and its beneficiaries. *Koepnick,* 221 Ariz. at 377, ¶ 18, 212 P.3d at 69. And, like a private trustee, it must "exercise the care and diligence which an ordinary prudent person under the circumstances would exercise in the management of his own affairs." *Bulla v. Valley Nat'l Bank of Phoenix,* 82 Ariz. 84, 89, 308 P.2d 932, 935 (1957). The Commissioner is obligated to maximize trust revenue. *Koepnick,* 221 Ariz. at 377, ¶ 19, 212 P.3d at 69. "Immediate revenue, however, is not the sole consideration in determining the best interest of the trust" and the "Commissioner has great discretion concerning the disposition of trust lands and has authority to devise detailed plans for the sale, lease and use of state land." *Id.* (internal citations omitted).

¶ 28 Here, the record demonstrates (and the Districts submitted no evidence to the contrary) that in deciding to enter into the settlement, the Commissioner actually considered the factors the Districts assert he was obligated to consider. The Commissioner determined the state trust land subject to the Original and Modified Easements had "substantial value," considered the "pros and cons of trying to establish the validity of these [09] easements," and took into account the effect proceeding on such a claim would have on the ASLD's business relationships with the holders of the 09 Easements. The Commissioner also determined the release of the 13,000 acres would allow him to sell that land as it would no longer be encumbered by a flood control easement, the ASLD did not have the resources to become responsible for the dams, and the legislature had not approved a budget that would have allowed the

---

**14.** We generally review a superior court's approval of a settlement for an abuse of discretion, reviewing specific factual findings for clear error. *See Dowling v. Stapley,* 221 Ariz. 251, 273, ¶ 72, 211 P.3d 1235, 1257 (App.2009).

**15.** In approving the settlement, the superior court did not make an explicit finding the settlement was prudent. As noted above, however, it found there was "no dispute" the parties had acted in good faith in settling their "legitimate differences." *See supra* ¶ 13. It also found the settlement did "not prejudice any beneficiaries of the School Trust." Given these findings, we conclude the superior court implicitly found the settlement was prudent.

ASLD to litigate its dispute with the FCD. In our view, the factors considered by the Commissioner were those an "ordinary prudent person under the circumstances would exercise in the management of his own affairs."

¶ 29 The Districts' objection to the prudence of the settlement is essentially grounded on the Commissioner's failure to quantify land values and various costs. Under different circumstances such quantification may well be necessary. Here, however, the dispute between the ASLD and the FCD had gone on for many years and both sides were well aware of the risks, dangers, and uncertainties of their competing positions regarding the validity of the Original Easement. The record reflects the Commissioner determined it would not be worthwhile to obtain what he characterized as a "professional appraisal" given its expense and what he also referred to as the "uncertainties" of the dispute with the FCD. The Commissioner appreciated the economic consequences to the trust, consequences the Districts never disputed, of these uncertainties absent any settlement. The Commissioner's decision to settle with the FCD was not imprudent.

## CONCLUSION

¶ 30 For the foregoing reasons, we affirm the judgment of the superior court approving the settlement between the ASLD and the FCD.

CONCURRING: DANIEL A. BARKER, and PETER B. SWANN, Judges.